WASATCH MINING CO., RESPONDENT, v. JOSEPH A. JENNINGS AND OTHERS, APPELLANTS.

CORPORATIONS.—LIEN FOR ADVANCES.—Plaintiff brought suit to declare a deed absolute in form a mortgage and for an accounting, and alleged that the summonses issued in the cases that resulted in the judgments and sales under which defendants claimed title were not served on a proper person; that after the sale on execution and before the time for redemption had expired, the plaintiff agreed that if J. and C. would redeem the property and protect the interest of the company and advance the money to redeem, such advance would·be treated by plaintiff as a preferred debt and that J. and C. should hold the deed given on sale as security and should hold title until the money was refunded, and that J. and C. did so; held, that complaint showed in J. and C. an equitable claim on the property until advances were paid back, unless the transaction was within the statue of frauds.

PAROL EVIDENCE TO SHOW DEED A MORTGAGE.—Complaint further alleged that J. and C. were directors in the plaintiff company and the former its president and took part in the meetings, held, that parol evidence was admissible to show the fiduciary relation and that the deed absolute on its face was a mortgage.

CORPORATIONS.—CONSTRUCTIVE TRUST IN DIRECTORS.—Where two directors obtain title and absolute deed as above, they are in possession as trustees for the corporation and should account, though it were conceded that the advance was·not a loan to the company and that the deed was not obtained by actual fraud.

MORTGAGOR AND MORTGAGEE.—MORTGAGEE IN POSSESSION OF MINING PROPERTY.—Where mortgagee or trustee is in possession of mining property under a deed absolute in form with knowledge and consent of mortgagor, he should be allowed not only for the actual cost of extracting the ore, but also for all reasonable expenditures in developing and improving the property, so far as its value was increased by such development and improvement.

APPEAL from a decree of the district court of the third district, and from an order refusing a new trial. The opinion states the facts.

*Messrs. Sheeks & Rawlins*, and *Mr. P. L. Williams*, and *Mr. Le Grand Young*, for appellants.

The complaint stated no cause of action, or any matter entitling the plaintiff to equitable relief. According to its

allegations the judgments, and all proceedings based thereon, including the deed to Jennings and Clark were utterly void, not even creating a cloud upon the title alleged to be in the plaintiff. The remedy of the plaintiff, if it had any, was an action of ejectment, to recover the possession of the property: *Lewis .v. Cocks*, 23 Wall., 466; *Killain* v. *Ebbinghaus*, 110 U. S., 568; Freeman on Judgments, Sec. 117; 3 Pomeroy's Equity, 431.

The agreement alleged in the complaint, to the effect that Jennings and Clark took the deed absolute in form, subject to a trust in favor of the plaintiff, not being founded upon an instrument of writing subscribed by the parties, was void under the statute of frauds, and the court erred in admitting oral evidence to establish it: *Barnett* v. *Dougherty*, 32 Penn. St., 371; *Kellum* v. *Smith*, 33 Penn. St.. 158; *Payne Admr.* v. *Patterson Admr.*, 77 Penn. St., 134; *Bennett* v. *The Dollar Savings Bank*, 87 Penn. St., 382; 103 Penn. St., 446; *Levy* v. *Brush*, 45 N. Y., 589; *Wheeler* v. *Reynolds*, 66 N. Y., 227, 236; *Shafter* v. *Huntington*, 53 Mich., 310; *Watson* v. *Erb*, 33 O. St., 35; 2 Story, Eq., 1201 a; *Walter* v. *Klock*, 55 Ill., 362; *Lathrop* v. *Hoyt*, 7 Barb., 59; *Botsford* v. *Burr*, 2 John. Ch., 405; *Hall* v. *Shultz*, 4 John., 240; *Howland* v. *Blake*, 97 U. S., 624; 7 Bissell, (C. C.) 40; 3 Sumner, (C. C.) 435; *Richardson* v. *Johnson*, 41 Wis., 100; 1 Jones on Mortgages, Sec. 324; Comp. Laws of Utah, Gen. Sec. 1010.

If the plaintiff desired to set aside the transaction, it was necessary that it should act promptly, otherwise its right to do so would be lost: *Twin-Lick Oil Company*, v. *Marbury*, 91 U. S.; 587.; *Hotel Co.* v. *Wade*, 97 U. S., 22, 23; *Rolling Stock Co.* v. *Railroad*, 34 O. St., 464; Morawetz on Corp., Sec. 245; 37 N. J. L., 102; 113 U. S., 326.

In this case the complaint not having been filed for more than five years after the cause of action accrued to apply for redemption, it was barred by the statute of limitations: *Koch* v. *Briggs*, 14 Cal., 256; *Espinosa* v. *Gregory*, 40 Cal., 59;. 40 Cal., 117; *Henry* v. *Hotaling*, 41 Cal., 22; *Grattan* v. *Wiggins*, 23 Cal., 34, 35; *Cunningham* v. *Hawkins*, 24 Cal., 410; *Arrington* v. *Liscom*, 34 Cal., 372; *Caufman* v. *Sayre*, 2 B. Monroe, 202; *King* v. *Meigher*, 20 Minn., 264;

2 Jones on Mortgages, Sec. 1146; *Montgomery* v. *Spect*, 55 Cal., 252; *Pico* v. *Gallardo*, 52 Cal., 206.

As a general rule an ordinary mortgagee in possession, is only liable to exercise such care and diligence as is usually exercised by a provident owner. He is only liable for his net receipts after deducting the expenses such an owner would make: 2 Jones on Mortgages, Secs. 1123, 1125.

There is, however, a distinction between the rights of an ordinary mortgagee, and a grantee in possession under a deed absolute in form, given by way of security merely, in reference to accounting. Such a grantee, has not only all the rights of a mortgagee, but is also the general agent of the grantor, to manage the property in his discretion and is entitled to credit for all expenditures, both for repairs and permanent improvements, which the owner himself would or might make in the exercise of ordinary and reasonable care: *Harper's Appeal*, 64 Penn. St., 315; *Bernard* v. *Jennison*, 27 Mich., 230; *Bacon* v. *Cottrell*, 13 Minn., 194; *Rowena* v. *Sharp's Rifle Mfg. Co.*, 29 Conn., 282, 323; 2 Jones on Mortgages, Secs. 1117, 1137; 2 Lead. Cas. in Eq., 2011; *Waters* v. *Stevenson*, 13 Nev., 181.

*Messrs. Sutherland & McBride*, for respondent:

Constructive trust was imposed on directors in fiduciary relation: 2 Pomeroy Equity Jur., Secs. 1053, 955, 956; 1 Lead. Cases in Eq., 97; *Home* v. *Feuda*, 5 John. Ch., 388; *Fogg* v. *Mann*, 2 Sumn., 486; *Weaver* v. *Webb*, 1 Casey, 270; *Llyod* v. *Lynch*, Id., 419; *Smiley* v. *Dixon*, 1 Pen. and Watts, 439; *Rothwell* v. *Dewers*, 1 Black, 618; *Bell* v. *Webb*, 1 Gill, 163; *Wade* v. *Pettibone*, 11 Ohio, 57; *McDowell* v. *Melroy*, 69 Ill., 498; *Harper* v. *Perry*, 27 Iowa, 57; *Case* v. *Carrol*, 35 N. Y., 385; *Torry* v. *Orleans Bank*, 9 Prige., 650; *Cumberland Coal Co.* v. *Sherman*, 30 Barb., 553; *Trotter* v. *Smith*, 59 Ill., 240; *Miller* v. *McGacker*, 15 Abb. New Cases, 204; *Wright* v. *Gray*, 101 Ill., 233; *Dickinson* v. *Codwise*, 1 Sandf. Ch., 214; *Cox* v. *Ornsman*, 76 Ind., 210; *David* v. *Tucker*, 41 Conn., 197; *Church* v. *Roland*, 64 Pa. St., 442; *Ryan* v. *Dax*, 34 N. Y., 307; *Coyote etc. Co.* v. *Rubble*, 8 Ore., 300.

A person agreeing verbally to bid on lands for another at sheriff's will be decreed to hold in trust, though he takes the title in his own name: *String* v. *Glasgow*, 2 Murph., 289; *Denton* v. *McKenzie*, 1 Desau., 289; *Brown* v. *Lynch*, 1 Paige, 147; *Lellard* v. *Casey*, 2 Bibb, 459; *Lang* v. *McKee*, 13 Mich., 124; *Rose* v. *Bates*, 12 Mo., 30; *Walford* v. *Harrington*, 86 Pa. St., 39; *Marlatt* v. *Warwick*, 18 N. J. Eq., 108; *Combs* v. *Little*, 3 Green., Ch. 310; *Beegle* v. *Wintz*, 55 Pa. St., 369; *Hidden* v. *Jordan*, 21 Cal., 92; *Sandfoss* v. *Jancy*, 35 Cal., 481.

Director will be held to be trustee: *Covington, etc., R. R. Co.* v. *Browlen Heirs*, 9 Bush., 470; *Rothwell* v. *Dewees*, 1 Black, 613; *Bennett* v. *Austin*, 81 N. Y., 308; *Barrett* v. *Stewart*, 3 Sandf. Ch., 15; *Cameron* v. *Lewis*, 56 Miss., 76; *Seichrist's Appeal*, 66 Pa. St., 237; *Onson* v. *Coun*, 22 Wis., 329; *Walford* v. *Herrington*, 74 Pa. St., 311; *Rose* v. *Hayden*, 35 Kans., 106; S. C. 57 Am. R. 145; *Judd* v. *Morsely*, 30 Iowa, 423; *Bennon* v. *Bean*, 9 Iowa, 395; *Bryant* v. *Hendricks*, 5 Id., 256.

On the case stated and found the statute of limitations commenced to run on the completion and discovery of the fraud—when the fiduciary person throws off the mask and proclaims his intention to retain the advantage which he is found to hold against conscience: *Covington, etc., R. R. Co.* v. *Bowler*, 9 Bush., 483; *Currey* v. *Allen*, 3 Cal., 254; *Manning* v. *Hayden*, 5 Sawyer, 379; *Millard* v. *Hathaway*, 27 Cal., 119, 145; 2 Pom. Eq., sec. 917 and notes; *Schroder* v. *Johns*, 27 Cal., 274; *Beaubien* v. *Beaubien*, 23 How., 207; *Miller* v. *McIntyre*, 6 Pet., 66; *Elmendorf* v. *Taylor*, 10 Wheat., 152; *Kane* v. *Bloodgood*, 7 John. Ch., 90, 135; *Michoud* v. *Girod*, 4 How., 560.

Directors were trustees, and holding and working the property in violation of their trust. The rule in such accounting denies credit for expenses: *Salisbury* v. *McCoon*, 3 N. Y., 379; *Nesbitt* v. *St. Paul Lumber Co.*, 21 Minn., 491; *Bull* v. *Griswold*, 19 Ill., 631; *Isle Royal M. Co.* v. *Hertin*, 37 Mich., 336; *Symes* v. *Oliver*, 13 Mich., 9; *Grant* v. *Smith*, 26 Mich., 201, 206, 208; *Winchester* v. *Craig*, 33 Mich., 205, 221, 222; *Wather* v. *Wetmore*, I. E. D. Smith, 7; *Betts* v. *Lee*, 5 John., 348; *Curtin* v. *Groat*, 6

John., 168; *Brown* v. *Sax*, 7 Cow., 95; *Riddle* v. *Driver*, 12 Ala., 590; *Rice* v. *Hallerbeck*, 19 Barb., 664; *Babcock* v. *Gill*, 10 John., 287; *Ellis* v. *Wise*, 33 Ind., 127; *Snyder* v. *Vaux*, 2 Rawle, 423; *Miller* v. *Humphries*, 2 A. K. Marsh, 446: *Davis* v. *Easley*, 13 Ill., 192; *Baker* v. *Wheeler*, 8 Wend., 505; *Bly* v. *U. S.*, 4 Dill., 466; *Stuart* v. *Phelps*, 39 Iowa, 14; *Benjamin* v. *Benjamin*, 15 Conn., 347; *U. S.* v. *Mills*, 9 Fed. Rep., 684.

Wherever credits are allowed to mortgage for improvements good faith and innocent mistake, and no knowledge of facts which could render the title defective are essential: 3 Bon. Eq., sec. 1242, note 1; *Jackson* v. *Loomis*, 4 Com., 172; *Hatcher* v. *Briggs*, 6 Oregon, 31; *Morrison* v. *Robinson*, 31 Pa. St., 456; *Russell* v. *Blake*, 2 Pick., 507; *Utterbach* v. *Barnes*, 1 McLean, 242; *Dothage* v. *Stuart*, 35 Mo., 231; *White* v. *Morn*, 21 Cal., 34; *McGarraty* v. *Byington*, 12 Id., 426; *Worthington* v. *Young*, 8 Ohio, 401; *Bidell* v. *Shaw*, 59 N. Y., 46; *Moore* v. *Cable*, 1 John. Ch., 384, 387; *Wetmon* v. *Roberts*, 10 How. Pr., 54; *Williams* v. *Gibber*, 20 How., 538-9; *Coleman* v. *Wotherspoon*, 66 Md., 289; *Canal Bank* v. *Hudson*, 14 U. S., 67, 82-83; *Benedict* v. *Gilman*, 4 Paige, 62; *Frost* v. *Davis*, 31 Ind., 40, 41; *Micklo* v. *Delaye*, 17 N. Y., 80; *Dart* v. *Hercaler*, 57 Ill., 450; *Davidson* v. *Barclay*, 63 Pa. St., 417; *Green* v. *Dixon*, 9 Wis., 539; *Haven* v. *Adams*, 8 Allen, 366; *Bamberger* v. *Turner*, 63 Ohio St., 267.

ZANE, C. J.:

This is an appeal from the third district court of Utah. The plaintiff, a mining corporation, alleged in its complaint that on the second day of January, 1877, it was the owner in fee, and was in possession of, the Walker & Walker extension and the Buckey mines, and also of a portion of the Pinyon mine, described therein; and that these mines were of the value of $300,000; that on the second day of January, 1877, Gust. Norquist, Swan Oleson, and John Danielson obtained judgments against plaintiff aggregating $781.81; that executions were issued, in pursuance of which the mines were sold to the plaintiffs in those actions for the amount of such judgments

and costs; that William Jennings, a stockholder and president of the corporation, and John Clark, also a stockholder, at a meeting of the stockholders agreed with the company to redeem the property from the sale, and to advance the moneys therefor; that it was agreed that such advance should be treated as a preferred debt; that as security for this advance the said Jennings and Clark should buy the certificates of sale, and should take the marshal's deed in their own names, and should hold the title until their advances, and interest thereon, should be refunded; that, in pursuance of such agreement, Jennings and Clark purchased the certificates, and took the marshal's deed in their own names; that on the fifth day of September, 1879, Clark conveyed his interest to Joseph A. Jennings, son of William Jennings, who at the time of the conveyance was informed of the facts; that William Jennings took possession of the mines, and, during the years 1878 and 1879, either alone or in concert with one or both of the other defendants, received rents and profits therefrom more than sufficient to reimburse the amount paid for such certificates, and the interest thereon, and since the last-named date has worked the mines, and converted to his or their own use large sums of money, amounting to $125,000; that William Jennings executed to his son, Isaac Jennings, one of the defendants herein, a deed purporting to convey 459-500 of William's half interest in the Buckey mine; that this conveyance was without consideration, and was made with notice of all the facts affecting the title; that in 1880, and since that time, William and Joseph Jennings were requested, on behalf of the corporation, to account for the rents received and ores taken from the mines, and, after deducting the amounts due them for advances in buying in said property, to pay the residue, and convey the title acquired by the marshal's deed. This they refused to do. And plaintiff also alleges a readiness at all times to pay the amount due for such advances; and, if such payments had not been made out of the rents and profits, an offer to pay is alleged. The plaintiff prayed that defendants be required to account for all moneys received for rent and for ores, and to pay the same to plaintiff, less advances

and proper charges, and that they be decreed to convey and release to plaintiff all their right and title through the marshal's deed, and surrender possession of the mines; and plaintiffs prayed for such other relief as might be equitable.

The defendants answered, admitting that plaintiff was the owner of the mines prior to the sale, but denying the other allegations of the complaint. Defendants alleged, in their answer, that the stockholders, at the meeting mentioned in the complaint, refused to be assessed to raise the amount necessary to redeem the property from the sale mentioned, and that William Jennings then offered to advance the necessary sum, if Clark would join with him, and to make the redemption, if the corporation would agree to refund the same within three months, but the company refused to make such agreement; that no other meeting was held, and the stockholders wholly abandoned and forfeited its property and corporate franchise. The statute of limitations is also set up as a defense. Defendants also allege, in their answer, that, during the period they owned and were in possession of the mines and mining property, they expended large sums of money in the development and improvement thereof, which amount was largely in excess of all the receipts from the ore extracted from said mines, and disposed of by them, or any of them; that, as defendants were informed and believed, and alleged the facts to be, such expenditure exceeded the receipts by a sum of not less than $40,000; that the expenditures were made in good faith by defendants as the owners of the property, and thereby the same was greatly improved and benefited, and its value enhanced; that the work upon and improvement of the property, and expenditure thereon, was made with the full knowledge of each and all of the stockholders and officers of the company; that neither the stockholders nor officers, notwithstanding their knowledge, had ever objected to the said work, development, or improvement of the property, or to such expenditure thereon, but at all times had acquiesced therein. Defendants further alleged that they had held the title and possession of the property in their own right, and still so hold it.

On the trial the defendants objected to the admission of any evidence, on the grounds that the complaint stated no cause of action. The court overruled the objection. The defendants excepted, and assign such ruling as error.

It was alleged in the complaint that the summonses issued in the cases that resulted in the judgments and sales under which defendants claim title to the property were served on Samuel W. Riter, and that he was not a proper person upon whom to make service. If defendants' right depended upon such a service alone, the complaint would present no equitable cause of action. But it further appears, from the allegations of the complaint, that after the sale, and before the time of redemption had expired, the plaintiff agreed that, if Jennings and Clark would redeem the property, and protect the interest of the company, and advance the money necessary therefor, such advance should be held by them and treated by the company as a preferred debt; that, as security for the money advanced, Jennings and Clark should buy the certificates of sale and take the marshal's deed in their own names, and should hold the title so derived until their advances had been refunded to them. The complaint contained the further allegations (with others) that Jennings and Clark made the advance to protect the rights of the company, and took the marshal's deed in their own names as security. In view of such allegations, it cannot be said that the defendants had no equitable claim on the property until their advances were paid, unless the transaction is within the statute of frauds. And the allegation of payment in rents and profits rendered a statement of an account necessary.

A further objection was made to the introduction of evidence on the ground that the statute of frauds rendered oral evidence inadmissible. That objection was also overruled, and exception taken. That ruling is assigned here as error.

The defendants claim that, because of the statute of frauds, the evidence offered was inadmissible to show that the marshal's deed, absolute in form, should be regarded as an equitable mortgage, or that it was subject to a trust in favor of plaintiff. It does not appear from the com-

plaint that an instrument of writing was subscribed by the parties, and the agreement set up in the complaint is denied in the answer. Section 1010, Comp. Laws Utah, 1876, declares "that no estate or interest in lands other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared unless by act or operation of law, or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized by writing." Id., sec. 1011: "The foregoing provision shall not be construed to prevent any trust from arising or being extinguished by implication or operation of law; nor to abridge the powers of courts to compel the specific performance of agreements in case of part performance thereof." Trusts arising by implication or operation of law are expressly excluded from the effects of the statute; and a deed of conveyance, though absolute in form, if given to secure a debt, is in equity treated as a mortgage—a trust by operation of law. "To prevent oppression in such cases," courts of equity hold "that no restraint on the right of redemption should be tolerated," and that every man should possess the capacity to waive a right introduced for his own benefit. "The better view seems to be that an absolute conveyance can only be shown to be a mortgage by proving that it was obtained or is vitiated by fraud, mistake, or undue influence, or that the consideration on which it depends is a loan, and the whole transaction consequently defeasible; and if so, the whole doctrine may be referred to the law of implied and resulting trusts." 2 Lead. Cas., Eq., 677. "The form of the transaction, and the circumstances attending it, are the means of finding out the intention. If it was a mortgage in the beginning, it remains so." 1 Jones, Mortg., sec. 263. "But if the indebtedness be not cancelled, equity will regard the conveyance as a mortgage, whether the grantee so regard it or not. He cannot at the same time hold the land absolutely, and retain the right to enforce payment of the debt on account of which the conveyance

was made. The test, therefore, in cases of this sort, by which to determine whether the conveyance is a sale or mortgage, is to be found in the question whether the debt was discharged or not by the conveyance." Id., section 267.

Tested by these rules, was the deed to Jennings and Clark an absolute conveyance to them, or should it be treated as a mortgage to secure the amount advanced to obtain it, and the interest which might accrue? The form of the deed was absolute, but the circumstances under which it was executed may also be considered in finding out the intentions of the parties. The character of the transaction is determined from its form and its circumstances. If the $787.81 paid to redeem from the marshal's sale and to obtain the deed, should be regarded as a loan to the plaintiff, and the deed as security for the loan, then the deed must be considered a mortgage. On the contrary, if the deed should be regarded as a purchase by Jennings and Clark, with a promise on their part to convey to the plaintiff on payment of the amount advanced, then the deed must be held to be absolute.

The allegation of the complaint is that Jennings and Clark agreed with the company that they would redeem the property for, and protect the interest of, the company, and advance the money necessary therefor—such advance to be held by them and treated by the company as a preferred debt; that, as security, they should buy in the certificates of sale in their name, and take the marshal's deed thereon, and hold the title so derived until their advances to save the property should be paid. The allegation, in effect, is that Jennings and Clark agreed with the plaintiff that the money advanced by them to redeem the property should be a preferred debt, and that the deed should be held by them as security for its payment. If the money had been actually paid to the plaintiff by Jennings and Clark, and the plaintiff had paid it to the marshal, it would have constituted a valid debt of the plaintiff to Jennings and Clark beyond all question. But if, in the absence of a waiver, such payment had been made, the parties could waive the actual delivery of the money, and could regard the delivery as having been made. If,

at plaintiff's request, Jennings and Clark actually paid the redemption money to the marshal to redeem the property, the payment was for plaintiff's use, and the amount so paid became a valid demand, which they might have recovered from the company. At the time of the transaction the plaintiff had the right to redeem; this was a right with respect to the property which the company gave up, and promised to pay the amount advanced to redeem back to Jennings and Clark, if they would make the advance, and consider it a debt against the plaintiff, and hold the deed as security until the debt was paid. We are of 'the opinion that under the allegation, the amount paid to redeem should be regarded in this case as a debt due Jennings and Clark from the plaintiff, and that the marshal's deed should be regarded as a mortgage to secure that debt.

The case of *Sandfoss* v. *Jones*, 35 Cal., 481, is analogous in principle to the one under consideration. In that case the court said: "If, however, we consider the averments of the complaint in the light which is most favorable to the defendants, we have a verbal agreement on their part with an execution debtor, whose land is about to be sold by the sheriff, to purchase it with their own funds, and hold it for his benefit. Such an agreement is equivalent to a loan of the money, and a taking of the title as a security for its repayment, or an agreement by one person to purchase land for the benefit of another, under such circumstances as would amount to a fraud upon the latter if the former was allowed to repudiate his promise, and therefore not within the statute of frauds."

Still we are of the opinion that the breach of an agreement to purchase real estate, and to convey it to another whenever he should pay to the purchaser the price advanced, would not make the purchaser a trustee *ex maleficio*. "There must have been an original misrepresentation by means of which the legal title was obtained." The original transaction must have been tainted with fraud. "A promise to purchase real estate at a sheriff's sale, and to convey it to the defendant in the execution, whenever he should repay to the purchasers their advances. to him, does not raise a resulting trust in favor of the defendant."

*Wheeler* v. *Reynolds*, 66 N. Y., 227; Browne, St. Frauds, (3d Ed.) 86.  The law is well settled that if an absolute deed is taken in the name of one, and the consideration is paid by another, a trust results to the latter.  The payment of the consideration raises the trust.

In this case, and in this transaction, two elements appear that do not appear in a simple case where a person advances his own money to buy land in which another has no interest, upon a promise to convey to such party when the advance has been refunded.  In the first place, the plaintiff had the right to redeem the property, which right it lost by relying on the promise of Jennings and Clark; and, in the second place, it appears from the averments of the complaint, and the evidence, that Jennings and Clark were both stockholders and directors of the corporation; that the former was its president, and that both were present at and participated in the meeting at which the understanding was reached by which they took the deed in their own names.  This understanding was between themselves as individuals, and as officers of the company.  It may be said that regard for self, and regard for the welfare of others, are natural to civilized people.  But experience and observation indicate that the influence of the man as individual is often stronger than the influence of the man as the representative of another, in business matters.  And, further, corporations are obliged to rely upon their officers to transact their business; to that extent they must repose confidence in them.  The relation of Jennings and Clark to the corporation implied trust and confidence—the relation was fiduciary.  The probabilities are that such confidence had its influence on the transaction.  If, then, the title in them should be regarded as absolute, they would be permitted to retain an advantage that their relations with the corporation aided them in securing.  "When two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his posi-

tion will not be permitted to retain the advantage, although the transaction could not have been impeached, if no such confidential relation had existed. Courts of equity have carefully refrained from defining the particular instances of fiduciary relations in such a manner that other and perhaps new cases might be excluded. It is settled by an overwhelming weight of authority that the principle extends to every possible case in which there is confidence reposed on one side, and the resulting superiority and influence on the other. The relations and the duties involved in it need not be legal; it may be moral, social, domestic, or merely personal." 2 Pom. Eq. Jur., sec. 956.

In view, therefore, of the relations of Jennings and Clark to the corporation, and of the circumstances under which they obtained the legal title, as alleged in the complaint, we are of the opinion that a constructive trust should be imposed upon them for the purpose of remedy, though it were conceded that the consideration advanced was not a loan to the company, and the deed was not obtained by means of actual fraud. Such being the construction placed upon this transaction, we see no error in overruling the objection to the introduction of the testimony, on the ground of the statute of frauds.

On July 20, 1885, the district court held that Jennings and Clark were in possession of the property as mortgagees, or trustees for the plaintiff, and that the appointment of a referee was necessary. The purpose of the reference was stated in the order as follows: "To ascertain the amount due to the plaintiff company from the defendants for the rents and the issues of said property, and for the purpose of ascertaining the amount paid out by Wm. Jennings and John Clark, as mortgagees, with respect to said property." The amount paid by William Jennings and the other two defendants should have been included also. The referee so treated his authority, however, and included the last-named payments. Among the conclusions of law upon which this order was based is the following: "Said defendants should account, for the benefit of said plaintiff, for all moneys received by them, or any or either of them, from said property, either by way of rents or royalties

for ores taken out of the same, or for ores extracted by themselves, or either of them. And they may show their expenditures in extracting said ore, and in development work and improvements. How much should be credited said defendants for such expenditures against the moneys is reserved until such accounting is reported by referee to this court."

In pursuance of the above order the referee stated the account embodied in the following findings: "(1) William Jennings and John Clark, the predecessors in interest of defendants, and mortgagees and trustees of the property involved in this action, in September, 1877, paid for said property the sum of $864.05. (2) Defendants, and their predecessors in interest in the said mortgage and trust, between September, 1877, and the beginning of this action, received for ores extracted from said property mortgaged and held in trust, and by them sold, rents and royalties included, the sum of seventy-eight thousand and seventy-seven 23-100 dollars ($78,077.23); and the same was so received in the years following, to-wit: In 1879, $1,086.50; in 1880, $497.77; in 1881, $12,164.34; in 1882, $56,089.78; in 1883, $8,256.76. All said receipts for 1879 were royalties received under a lease. (3) Defendants, and their said predecessors in interest, over and above the amounts stated in the first finding, between September, 1877, and the beginning of this action, expended in and about the working, improving, and developing said mortgaged property, and in extracting, freighting, and selling ores therefrom, the sum of $93,510.36. And such expenditures were made in the years, and are classified and apportioned, as follows:

| Years. | Labor. | Sampling and Assaying. | Freight and Hauling. | All other, including Supplies. | Totals. |
|--------|--------|------------------------|----------------------|-------------------------------|---------|
| 1878.......... |  |  |  | $  97 81 | $    97 81 |
| 1879.......... |  |  |  | 191 18 | 191 18 |
| 1880.......... | $ 2,955 60 | $   11 00 | $   153 10 | 2,875 64 | 5,995 34 |
| 1881.......... | 15,292 48 | 592 03 | 2,272 33 | 7,047 53 | 25,204 37 |
| 1882.......... | 20,504 37 | 4,046 86 | 17,619 52 | 11,244 14 | 53,414 89 |
| 1883.......... | 4,350 12 | 978 86 | 2,001 10 | 1,276 70 | 8,606 77 |
|  | $43,102 56 | $5,628 75 | $22,046 05 | 22,733 00 | $93,510 36 |

No work upon the property other than resetting the stakes thereof, and taking care of it, was done by defendants, until 1880. (4) The total number of tons of ore extracted by defendants, and their said predecessors in interest, is 3,215. The expenditure which directly contributed to the extraction of said ore, and which, if the location of ore bodies had been known in advance of the development work, would have sufficed to extract and raise said ore to the surface, and with the aforesaid expenditure for hauling freights, sampling, and assaying to convert the same into the moneys received therefor as aforesaid, is $8 per ton, and for said 3,215 tons, $25,720. (5) Not included in the foregoing, Joseph A. Jennings, one of the defendants, rendered services as superintendent, and in assaying in the working and developing said property, from December 1, 1879, to October 1, 1880, 10 months; and from October 15, 1882, to May 1, 1883, $6\frac{1}{2}$ months—in all $16\frac{1}{2}$ months; and said services were worth $200 per month—making, in the aggregate, $3,300. Isaac Jennings, another defendant, rendered service as superintendent in same business from January 1, 1881, to October 15, 1882, $21\frac{1}{2}$ months; and said services were worth $150 per month—aggregating $3,225. (6) The expenditure not connected with the extraction of ore was made principally in an endeavor to trace all ore or vein connection from said property into adjoining mining claims, the Climax and Rebellion. All the work done was reasonably adapted to the development of the property, and to the probable enhancement of its value."

So much of the decree of the court below as it is necessary to quote, is as follows: "*First.* It appearing that the mortgage debt has been fully paid, that said defendants, within thirty days after the notice of this decree, make, execute, acknowledge, and deliver to plaintiff a deed of conveyance in proper and sufficient form, conveying to said plaintiff the property in question. *Second.* That said plaintiff do have and recover of and from said defendants the sum of thirty-three thousand one hundred and three and seventy-nine one hundredths dollars, for proceeds of ores extracted by William Jennings (now deceased) in his life-time, jointly with the said Joseph A. Jennings and

Isaac Jennings, from the said mining claims, while in possession and holding the same as mortgagees and trustees, over and above the amount necessary to pay the mortgage debt and interest of said plaintiff to said defendants, and all expenditures in the extraction and sale of said ores, together with the costs of this action, taxed at the sum of $301.15, and that said plaintiff have execution therefor."

For extracting the ore the defendants were allowed by the decree only such expenditure as directly contributed to its extraction,—just that expenditure which, had the location of the ores been known, would have been sufficient to extract the ore and raise it to the surface. The defendants would thus be required to work at their own peril; to know the end from the beginning; to understand precisely the position of the ore bodies before that position was determined. If the miner could see through all obstacles, error would be unnecessary, and experiments should not be made. He should then be required to work always in the right place, and in the right direction. He could then be held to have seen the end from the beginning. Then it would be right to test the miner's conduct and his rights by an infallible standard. But as a miner is compelled to pursue his search for hidden ore by the uncertain light of inference from appearances and experience, it appears illiberal to test his conduct and his rights by such an absolute and infallible standard. The referee found that $43,102.56 were expended for labor; all of which was reasonably adapted to the development of the property, and to the probable enhancement of its value. But the decree allowed only $25,720 of this to the defendants, and disallowed $17,382.56, and also expenses incurred, including those for supplies in work, improving and developing the property, amounting to $22,733.09. According to the findings upon which the decree was entered, the defendants, and their predecessors in interest, while in possession of the property under the deed, expended in working, improving, and developing the mine, and in extracting, freighting, and selling the ores, $15,423.13 more than they received for ores extracted, and for rents and royalties, yet a decree was rendered against the defendants for the sum of $33,103.79.

If the defendants shall be required to pay this amount, they will have paid in addition to giving their own time, the sum of $49,400.97 merely for the privilege of developing and improving the mine, without receiving any consideration whatever.

It appears from the findings and the evidence in the record, that in September, 1877, the property in dispute had been sold on execution against the plaintiff: that the time of redemption was about to expire, and that $864.05 were required to redeem; that the corporation refused to raise the amount; that Jennings and Clark made the advance, and took the assignment of the certificates of sale and the marshal's deed in their own names, at the request of the company. According to the understanding of William Jennings, the agreement with the corporation was to refund within three months. Clark testified that he heard three months mentioned, but understood it to refer to the time within which claims against the company should be presented; but he was not clear in his recollection. It also appears from the evidence that after Jennings and Clark had held the deed about a year, without any payment or offer to pay by the company, they took actual possession of the mine, and made valuable improvements, before they leased it. Joseph Jennings testified that the cost of this improvement was about $1,500; but this estimate, in the light of the evidence, is probably too high. They then leased the mine until the end of the year 1879. About that time Clark sold his interest to Joseph A. Jennings, and the defendants worked the mine until some time during the year 1883, when this suit was brought. During all this time the plaintiff had notice, by its officers and stockholders, of such possession, leasing, and working, and made no protest or objection, nor instituted any action to test its rights. In fact, Jennings and Clark were obliged to take actual possession of the mine, in order to reimburse themselves for the money paid out to redeem. And it appears from the findings that the income from the property, in excess of the expenditures upon it, at no time equaled the advances made by them. As to whether there was an understanding that Jennings and Clark were to be paid their advances, to re-

deem within three months, or no time was fixed, the evidence is conflicting.  As the deed has been construed to be a mortgage, it must be regarded as continuing to remain such.  But the understanding by defendants that repayment was to be made within three months would have some bearing upon the good faith of the defendants in claiming that the absolute title was in themselves, when the claim of the plaintiff to the property was made.

In view of the deed to Jennings and Clark, the payment by them to obtain it, the verbal understanding at the time, the failure of the plaintiff to refund, or even to pay interest, the acquiescence of the plaintiff in defendants' continued possession, with a knowledge that they were working and developing the property, in view of the laches of the plaintiff in not offering to refund, and in not demanding an account, and in not instituting an action for a period of seven years, with the further consideration that the defendants were not trustees *ex maleficio*,—we are of the opinion that the rule applied to defendants' claim was too narrow and illiberal.

Jones in his work on Mortgages, says: "A grantee in possession under a deed absolute in form, but given by way of security merely, is said not to stand exactly in the same position, in reference to accounting, as an ordinary mortgagee in possession, inasmuch as he is the agent of the mortgagor as well as the mortgagee, and is chargeable for any failure to obtain the full rental value of the premises, only on the same ground that an agent would be.  If the grantee has good reason to consider himself possessed of an absolute estate in the land, and he consequently makes permanent improvements, he will be entitled to allowance for these, when a mortgagee generally would not be entitled to such allowance."  2 Jones, Mortg. (3d Ed.) 1117. To this effect is the case of *Bernard* v. *Jennison*, 27 Mich., 231.  These authorities say that grantees in possession under a deed absolute in form, but given by way of security, do not stand in the same position, in reference to an accounting, as ordinary mortgagees who take possession in order to enforce their security; they are regarded as agents of the grantors as well as mortgagees.  As such agents,

they are justified in making such permanent and bene-
ficial repairs and improvements as a prudent owner
would deem it to the interest of the property to make.

The case of *Mickles* v. *Dillaye*, 17 N. Y., 80, was that of
a mortgagee in possession, under circumstances which in-
duced him to believe that he had the legal title. The
court said: "The judgment of the supreme court should
be reversed as respects the accounts stated by the referee,
and there should be a reference in that court to take an ac-
count between the plaintiff and the defendant Dillaye, in
which the latter should be allowed the enhanced value of
the premises, on account of the improvements made by the
defendant." Also *Bacon* v. *Cottrell*, 13 Minn., 194, (Gil.
183.)

In *Harper's Appeal*, 64 Pa. St., 315, it appeared that
Harper was in possession under a deed absolute in form,
but held to be a mortgage. And a claim for costly and
permanent improvements, made without the consent of the
mortgagor, was put forward. The court in that case said:
"The mortgagor was *sui juris*, competent to contract and
manage his own business, and agreed that he [the mort-
gagee] should take the estate as absolute owner. It is only
upon the ground of a general policy, for the protection of
needy debtors from the oppressive demands of their greedy
creditors, that the principle has been established that such
a transaction shall be regarded in equity as a mortgage; and
once a mortgage, always a mortgage. Will it be equitable,
under such circumstances, to decree a reconveyance of the
property, increased in value by substantial and valuable
improvements and repairs, at a large expenditure of money
in the most perfect good faith, without any allowance there-
for? Such a result would, in our judgment, be in the
highest degree inequitable, and not in accordance with the
liberal principles upon which courts of equity proceed in
analogous cases."

Numerous other cases are referred to in briefs of counsel,
but we do not regard them as analogous to the case in
hand. In some of the cases a mortgagee under an ordinary
mortgage had taken possession, and made costly improve-
ments, without the consent of the mortgagor. In such

cases the mortgagee will not be permitted to place such impediments in the way of redemption. He cannot prevent redemption, or render it more difficult, by requiring the mortgagor to pay for costly improvements. In other cases the trustee was chargeable with fraud—held to be a trustee *ex maleficio.*

But in this case the defendants were in under a deed absolute in form, with the knowledge and consent of the plaintiff, and were obliged to occupy and work the mine themselves, or by their tenants, in order to reimburse themselves for their advances; the plaintiff failing to do so. As a general rule, the value of a mine is made manifest by large expenditure of money. Should such work be regarded as an improvement when it brings to view valuable ore bodies? The development work upon this mine brought its value to light, and then the plaintiff became anxious to repossess it. A decree giving to the plaintiff the property, and the market value of the ore, after allowing the cost of its extraction, raising to the surface, and transportation, and the expenditures for developing and improving the property, to the extent that the value was enhanced thereby, would appear to be just to both parties. If the plaintiff has been paid any portion of the money it now claims through the enhancement of the value of the property, would it be equitable to require the defendants to pay again? Nor would it be just, under the circumstances in evidence, to assess damages against the defendants as punishment.

We are of the opinion that the decree should have allowed to the defendants their reasonable expenditures, in developing and improving the property so far as its value was increased by such development and improvement, in addition to the expenditure directly contributing to the extraction of the ore. The other errors assigned are overruled, and the final decree of the court below is reversed, and the cause is remanded to that court, with directions to further find whether the property was benefitted by the expenditures of the defendants, and their predecessors in interest, for work and improvements on the property not directly contributing to the extraction of the ore; and, if

the court finds that such expenditures did benefit the property, further to find how much such benefits enhanced the value of the property; and to that end to take additional testimony, if necessary, and to make such further orders, and to render such decree, not inconsistent with this opinion, as may be equitable.

HENDERSON, J., concurred.    BOREMAN, J., dissented.