No. 29,796.

THE MASTER BUILDERS ASSOCIATION OF KANSAS, *Appellant,*
v. LEE CARSON, *Appellee.*

(296 Pac. 693.)

Opinion filed March 7, 1931.

*C. W. Mitchell,* of Cherryvale, *C. W. Burch, B. I. Litowich* and *LaRue Royce,* all of Salina, for the appellant.

*Sullivan Lomax,* of Cherryvale, for the appellee.

The opinion of the court was delivered by

SMITH, J.: The action was brought to collect the amount of money which defendant had agreed to pay plaintiff in case defendant should be awarded the contract to build a certain schoolhouse. A demurrer to the petition was sustained. Plaintiff appeals.

The facts are that defendant entered into a contract with several other contractors who were about to bid for the contract to build a schoolhouse in Cherryvale, and with plaintiff association. The pertinent part of the contract was as follows:

"We, the undersigned, being general building contractors, bidding on the job first above mentioned and not being members of the Master Builders Association of Kansas, do hereby enter into agreement, each and all of us, with the

above-mentioned association to be bound by article 6 of the said association's by-laws, the same as if we were members, in so far as this one job is concerned."

### Article 6 of the by-laws is as follows:

"SECTION 1. It shall be the duty of each member securing a contract within the state of Kansas, amounting to $10,000 or more, to pay the executive officer one-half of one per cent (½%) of the full contract price, said payment must be made out of the first estimate, received on such contract."

"SEC. 2. The secretary-treasurer shall retain in the association's treasury one-half of this amount, the remaining one-half to be distributed equally between the five lowest unsuccessful bidders on said contract, or *pro rata* proportion if less than five."

### The petition set out the purpose of plaintiff as follows:

"That plaintiff association is organized for the purpose of associating together master builders of the state of Kansas under a uniform code of ethics, by-laws and constitution, to promote and encourage a high standard of competition among all classes of contractors by encouraging fair practice in bidding and in fulfilling contracts. That plaintiff association has no capital stock and consists of a membership composed of general contractors paying certain fees into the treasury of plaintiff association for the employment of engineering service and quantity surveys of building construction and to further the objects and purposes for which plaintiff association was created."

It further alleged appellee was the successful bidder, received his pay therefor, was indebted to the appellant in the amount of $168.88, and that he refused to pay.

Appellee demurred to the petition of plaintiff on the ground that the contract sued on was against public policy, and hence the petition did not state a cause of action. The court below adopted this theory and sustained the demurrer.

### The rule in 13 C. J. 425 is:

"It is perhaps correct to say that public policy is that principle of law which holds that no person can lawfully do that which has a tendency to be injurious to the public or against the public good, which may be designated, as it sometimes has been, the policy of the law or public policy in relation to the administration of the law."

### R. S. 50-112 provides:

"That all arrangements, contracts, agreements, trusts, or combinations between persons or corporations . . . which tend to prevent full and free competition in the . . . transportation or sale of articles imported into this state, or in the product, manufacture or sale of articles of domestic growth or product of domestic raw material, . . . and all arrangements, contracts, agreements, trusts, or combinations between persons . . . designed or

which tend to advance, reduce or control the price or the cost to the producer or to the consumer of any such products or articles . . . or any other service, are hereby declared to be against public policy, unlawful and void."

The above provision has been the announced view of our state on contracts of the kind described in the act since 1897.

It is so well settled as not to require citation of authorities that no right of action can grow out of a void contract.

The petition in the present case set out the contract in full. There can be no question as to its terms. All that remains is to ascertain whether this contract does come within the inhibition of the above statute. Does it "tend to advance . . . or control the price or cost to the consumer" of the contract to build the schoolhouse in question? We are not entirely without authority to guide us. The court of appeals of Kentucky, without the aid of a statute such as ours quoted above and relying largely upon the rule from Corpus Juris, decided:

"A contract by members of a voluntary contractors' association assessing a fee, upon each member, of a percentage of the contract price of any public contract secured by him is against public policy and void, regardless of the lawful intent of the parties in making it and of the further fact that the public may not have been injured in a particular instance." (45 A. L. R. 544, headnote. *Kentucky Association of Highway Contractors v. Williams,* 213 Ky. 167, 280 S. W. 937.)

The contract passed on in that case is almost precisely like the one in the case at bar.

The latest pronouncement of this court on the subject is contained in *Gard v. Holmes,* ante, p. 443, 295 Pac. 716.

There a secret agreement had been entered into between a firm of undertakers in Anthony and another firm of undertakers in Wichita whereby the latter was to induce another undertaker to leave his business in Anthony and go to work for the Wichita firm. The Anthony firm agreed to pay one-half his salary and advanced all the money to put the plan in operation. The action was brought to collect one-half of this amount. The court held that the original contract was the type of contract that comes within the provisions of the statute quoted herein because it was designed to and tended to advance and control the price and cost of undertakers' supplies within the trade territory of Anthony. The cases on this subject quite generally hold that the feature bringing a particular contract under the inhibition of the statute against monopolies is the tendency to bring about the evil results rather than the fact that any

certain result actually flows therefrom. What is the tendency of the contract in question? Knowing human nature as we do, this court is bound to assume that the contractor bidding on a job knowing that he will be called upon to pay one-half of one per cent of the contract price to a stranger to the contract will add that amount to the amount of his bid. This, of course, would increase the cost of the school building that much. This must be paid by the consumer.

There is present another feature of this payment that is not answered at all in the brief of appellant. The five contractors who are next lowest to the successful bidder would each receive an equal share of one-half of the amount claimed by appellant association. None of them is even claimed in the brief to have rendered any service to appellee. They do nothing whatever by way of assisting the successful bidder in making up his bid or carrying out his contract. This amount comes out of the public purse without any benefit going to it whatever.

This contract is against public policy for another reason. Appellant urges that it furnishes service to bidders through its engineering service and quantity surveys for the benefit of its members. In its brief it says:

"It is a matter of common knowledge that the plans and specifications for a building are highly technical, and that contractors making bids on contracts for the construction of buildings must expend time and money in studying the plans and specifications, and in making their estimates and figuring their bids; that time and money are spent by each of the contractors in preparing their bids and attending the letting. . . .

"The plaintiff association, in an effort to reduce the expenses of the contractors and thus procure a saving for the building public, and to stimulate bidding on all contracts throughout the state, has devised the scheme set forth in plaintiff's petition of furnishing engineering and quantity survey service to its members and those nonmembers who desire to take advantage of this service by executing such a contract as the one sued on in this action."

These arguments sound like arguments against any kind of antimonopoly legislation. The spirit of that type of statute is that there shall be absolute and unrestrained competition between parties. Our lawmakers have provided that such a policy is best for the common good. There cannot be this competition between contractors when all of them bidding on a certain job derive a large share of their information and their prebidding engineering service from the same source. The engineers and other employees of the

appellant may be ever so successful and ever so competent and efficient, but if all the bidders on a certain job have secured the same service of that kind, from whence is to come the competition? The spirit of this type of legislation is that all bidders will strive in all departments of their work to outdo the others that are in the same field. This feature of the contracting business is just as important to a successful contractor as the business of actually doing the work, and the spirit of the statute is that each one will strive to outdo the other by shrewder engineering work, by closer observation of local labor conditions, by closer figuring on the places from where raw materials may be obtained, freight rates and all the other myriad problems which enter into the successful handling of a bid for any job. Now, if this court should approve a contract such as the one sued on here, the public would lose much of the benefits to be derived from this competition between contractors. In fact, about the only thing that makes competition between contractors would be gone.

There is another statute in this state with reference to public contracts, being R. S. 72-1818. It is as follows:

"No expenditure involving an amount greater than $200 shall be made except in accordance with the provisions of a written contract, and no contract involving an expenditure of more than $500 for the purpose of erecting any public buildings or making any improvements shall be made except upon sealed proposals, and to the lowest responsible bidder."

That statute was passed with much the same end in view as the statute already quoted, and the reasons that make the contract in question void as being against public policy on account of the former statute also apply to it. In view of the reasons already stated herein, we are of the opinion that the contract in question is against public policy. The demurrer of the defendant to the petition of plaintiff was properly sustained. The judgment of the lower court is affirmed.

BURCH, J., not sitting.