366 P.2d 982

**ZION'S SERVICE CORPORATION,**
**Plaintiff and Respondent,**

**v.**

**H. A. DANIELSON, Defendant and**
**Appellant.**

**No. 9232.**

Supreme Court of Utah.

Nov. 29, 1961.

---

5.  See 54 C.J.S. Lis Pendens § 16.

Norman Wade, Salt Lake City, for appellant.

Nielsen & Conder, Salt Lake City, for respondent.

ANDERSON, District Judge.

The record discloses that the plaintiff, Zion's Service Corporation, was incorporated in 1955 by the defendant and 14 other masonry contractors who had decided to form a corporation that would provide certain technical services to its members. There would be available the services of specialists in estimating the materials which would be required for jobs open for bidding. These estimates would be circulated to all members. On January 3, 1956, the Board of Directors of the corporation agreed that as members they would pay to the corporation one per cent on all jobs received by the members up to $10,000, two per cent on jobs up to $25,000, and three per cent on any job over $25,000. The defendant was present as a director and seconded a motion that the fees due from the members be pro-rated and paid as the progress payments on a job were received. It was also agreed at this meeting that the corporation officers would determine the fee on jobs coming to the members through the corporation.

The defendant told the other directors that as long as Duane White was connected with the corporation he would not pay either for his stock or the dues for services rendered him. After Mr. White left the corporation, the defendant did pay for

his stock and made various payments on the fees for services.

A Mr. Gerald Whitaker was employed to provide the materials estimates and during 1956, 133 such estimates were prepared for the members, 127 being circulated to all members, and six for individual members. In 1957, 182 estimates were prepared and distributed, including a few private estimates. During this period of time the defendant obtained six jobs for which plaintiff claimed the fees due as per the schedule agreed upon for these jobs, totaling $5,288. The defendant made payments to plaintiff during this period totaling $1,662, leaving the balance claimed by the plaintiff in the sum of $3,626.

At a Board of Directors' meeting in October, 1958, the defendant was advised as to the amount of his bill, and after the deletion of one item agreed to pay it if all of the members owing would pay the same fee he had been charged.

Mr. Whitaker indicated that it was expected that the contractors would add to their bids the fee provided by the schedule of the corporation. It is also important to note that the corporation paid dividends to the members. The defendant received a check for one dividend of $1,000.

The trial court found that one of the purposes for which plaintiff corporation was formed "was to furnish to its members and stockholders material analyses or quantity surveys on projects open to bid by such members." It also determined that "in consideration of the agreement of the corporation to furnish such services to him and in consideration of the agreement of the other members of the corporation so to do, defendant agreed to pay to the plaintiff corporation in cash * * *."

The defendant argues that there is no evidence to show a contract, and second, that the plaintiff was not bound to do anything, so there was a lack of consideration which would preclude the formation of a contract. We do not agree.

The members organized the corporation for purposes mutually beneficial to each. At the Board of Directors' meeting on January 3, 1956, the members there present, the defendant among them, each agreed to pay a fee to be determined by the officers on jobs received through the corporation and on all other jobs received to pay in accordance with the schedule agreed upon at the meeting. Each obviously promised and agreed in consideration of the promises of the others.

When the defendant received the job in each of the six instances in question an enforceable obligation ripened requiring that he pay in accordance with his agreement. The fact that he asserted he would not pay until Mr. White left the company could have no possible effect on his liability under their agreement, but only give the

corporation a knotty administrative problem as to what they should do in view of his stand. More than this, he paid for his stock and made payments on the fees due for services rendered, further affirming that he would pay the balance. From these facts, it is abundantly clear there was more than sufficient evidence to support the trial court's finding of a contract between the parties. The amount of the claimed balance is without serious conflict in the record, providing the trial court with sufficient basis in evidence from which to determine the amount due.

The defendant's argument that plaintiff first breached the agreement by failing to make investments and therefore cannot recover, does not affect the enforceability of the agreement which the parties made. It is certainly true that an investment program, using the fees for the same after payment of costs, was planned. It was one of the powers of the corporation which the directors could exercise at any appropriate time. Since the filing of the complaint several investments in securities have been made. The powers of a corporation stated in its articles are to be exercised consistent with the judgment of the directors. The fact that these investments were not made earlier is not evidence of a breach of contract.

Section 25–5–4, U.C.A.1953, was cited by defendant as barring the plaintiff from recovery should the court find an agreement. The portion of the statute applicable is as follows:

"In the following cases, every agreement shall be void unless such agreement, or some note or memorandum thereof is in writing subscribed by the party to be charged therewith:

"(1) Every agreement *that by its terms* is not to be performed within one year from the making thereof." (Emphasis supplied.)

The witness Whitaker testified that each of the members of the corporatoin was free to leave the corporation at any time simply by bringing in his stock to the company and making his desires known. It is undisputed that no one did. Where the agreement can be performed within one year, though this be done by election of one of the parties to terminate, there can be no doubt but that the Statute of Frauds is not applicable. We agree with the following statement from the Restatement of Contracts and believe it determinative of this question:

"The words 'cannot be fully performed' must be taken literally. The fact that performance within a year is entirely improbable or not expected by the parties, does not bring the contract within this statute." (Sec. 198, Comment b.)

In Johnson v. Johnson, 31 Utah 408, 88 P. 230, we ruled that a contract by a purchaser of land to pay the seller "for life, one-half of the crops produced on lands" was not within the above provision since death might occur within one year. The right to terminate a contract at any time is likewise such an event as may occur within a year and hence the statute does not apply.

The defense which defendant seems to emphasize most vigorously is that in any event the contract under which plaintiff claims is unenforceable by reason of being in violation of Section 50–1–1, U.C.A.1953, (Utah Constitution Art. XII, Sec. 20) in that it is an unlawful restraint of trade. The following sections are relied upon by defendant:

Section 50–1–1, U.C.A.1953:

*"Combinations to control prices forbidden.*—Any combination by persons having for its object or effort [effect] the controlling of prices of any professional services, any products of the soil, any article of manufacture or commerce, or the cost of exchange or transportation, is prohibited and declared unlawful."

Section 50–1–6, U.C.A.1953:

*"Forbidden Contracts void.*—Any contract or agreement in violation of any provision of this chapter shall be absolutely void."

These sections are buttressed by citations of authority from 17 C.J.S. Contracts Sec. 238, page 622; 12 Am.Jur., Sec. 167, page 662; and the Restatement of Contracts, Sec. 517, all to the general effect that a contract which is, by its terms, an unreasonable restraint of trade is invalid as against public policy. With these there can be no argument. The defendant argues that the case of Masterbuilders Ass'n of Kansas v. Carson, 132 Kan. 606, 296 P. 693, applies the foregoing principles in a fact situation very similar to the one at hand. In that case the court held that the contract in question was void as against public policy.

It appears that in the Masterbuilders case there was a contract entered into whereby the defendant agreed to pay the plaintiff association one-half of one per cent of a contract price of $10,000. One-half of this amount was to go to the association and the remaining one-half was to be distributed equally to the five lowest unsuccessful bidders in the contract. The association was an association of contractors in Kansas. The contractors were not organized together as a corporation. The association furnished quantities estimates to its members as was done in the case at bar. The Kansas court said that a contract by

members of a voluntary association in assessing a fee upon each member of a percentage of the contract price of any public contract secured by him was void regardless of the intent with which it may have been entered into. The ruling of the court that the contract was void was based upon three grounds: (1) That the contractor is likely to add the cost of this service to his bid and therefore pass it on to the consumer; (2) that five others who did not do any services or any work for this, benefited from the contractor's bid; and (3) free competition is diminished where all contractors use the same service from the same source.

This case is comparable to the one at hand. The member contractor is likely to add the costs of this service to the consumer. This was borne out by plaintiff's witness, Mr. Whitaker, who stated he expected the amount to be charged to each contractor would be added to his bid.

Also, the members of the organization expected that the fees assessed would more than pay the cost of the same, since dividends were paid to the members from profits, and an investment program was contemplated. One of the inducements for members to join was the investment opportunity for the members arising from the investment of the funds of the corporation. This meant that all members were to receive dividends and benefit from the investments, without regard to their success as bidders.

Hence, in the case at bar the corporation was not formed strictly as a nonprofit trade association to provide essential information involving the economics of their trade, but had a wider and broader organizational purpose, a clear agreement to employ a common agent to provide one essential service in bidding each job—a common source of information for bidding,—and with a fee schedule producing sufficient profit for investments and dividends to be paid the members. All members would share in the benefits and profits of an investment program, irrespective of whether they actually paid any fees. This extra margin in fee was imposed knowing full well that it would be passed on to the public and the fees were computed with this very thought in mind.

██ We, therefore, conclude that where a group of contractors organize a profit corporation for the purpose of providing to each an essential service necessary for the individual contractor to make a bid on a particular job, and all the members get such information from this common source, and where the fee to be paid is graduated upward based on the total bid, and where the fee is understood to be in addition to the actual job cost with the purpose in mind

of carrying out an investment program for the members, and paying dividends, that such a contract is a combination which has as one of its objects the controlling of prices in violation of 50–1–1, U.C.A.1953, and also is in unreasonable restraint of trade and invalid as against public policy.

Plaintiff's authorities respecting the right of those engaged in commerce to organize into trade associations, nonprofit in nature, to provide essential information of a general nature that may be applied to specific problems of the members is not questioned. This is not such a case.

The citation of Frailey v. McGarry (1949), 116 Utah 504, 211 P.2d 840, is in point in that there must be a showing free from doubt that the contract is against public policy, and not merely one which has turned out unfortunately for a party, to successfully claim the defense of public policy. But the present case is a case where the contract is clearly against public policy.

For these reasons the judgment is reversed, and the district court is directed to enter a judgment dismissing plaintiff's cause and awarding defendant his costs herein.

HENRIOD, McDONOUGH, CALLISTER, and CROCKETT, JJ., concur.

WADE, C. J., having disqualified himself does not participate.