492 P.2d 1343

**George R. TAYLOR and Eva L. Taylor, his wife, Plaintiffs and Respondents,**

v.

**Jack C. TURNER, Defendant and Appellant.**

No. 12322.

Supreme Court of Utah.

Jan. 14, 1972.

**40**

Irving H. Biele, Salt Lake City, Patrick H. Fenton, Cedar City, for defendant and appellant.

Tex R. Olsen, Richfield, for plaintiffs and respondents.

CALLISTER, Chief Justice:

Plaintiffs initiated this action to recover upon two separate types of claims; in their first cause of action, plaintiffs sought a decree quieting title to real property in Salina, Utah. In their second cause of action, they sought the repayment of money advanced in a series of loans to defendant from January, 1962, through September, 1967. This matter was tried before the court, which rendered a decree declaring the plaintiffs the owners of the real property, free and clear of all claims of defendant, and a judgment for the plaintiffs in the sum of $11,666.99 plus costs; defendant appeals therefrom.

Defendant is the brother of Mrs. Taylor, one of the plaintiffs. The versions of the events which transpired, as related by the adverse parties, are in extreme conflict. A survey of the record reveals substantial evidence to support the determination of the trial court; therefore, this review will be in accordance with these findings which reflect a belief in plaintiffs' version of the transactions. According to plaintiffs, defendant approached them in January, 1962, and requested a loan so that he might go to Australia to start an insurance company. Mr. Taylor, who was in his late sixties, was contemplating retirement. Mrs. Taylor re-

lated that her brother induced them to make a short-term loan of their retirement funds, for a period of six months to one year. He promised them ten per cent interest, a rate which he indicated was much higher than they were receiving from the bank. Plaintiffs advanced $7,000 to defendant about January 12, 1962; defendant promised them some type of written agreement, and shortly thereafter a document came through the mail, which was entitled preincorporation agreement. At the end of this typewritten agreement, defendant had acknowledged in his own handwriting the receipt of $7,000. Subsequently on about January 16, 1962, plaintiffs advanced an additional $2,000.

Defendant asserted that the sum of $9,000 was invested by plaintiffs as participants in a business venture in Australia which failed. He introduced in evidence a second preincorporation agreement, which he insisted was the agreement of the parties. Plaintiff denied that this documentary evidence reflected their agreement and pointed out that this alleged contract recited $8,000, while the parties agreed the initial sum advanced was $9,000. To substantiate their version of the transaction, plaintiffs introduced an insurance policy in the face amount of $8,059, wherein defendant had made Mr. Taylor the beneficiary as a means of providing security; this policy was received by plaintiffs on approximately December 30, 1963. Plaintiffs further received certain payments from defendant by check, which had a notation thereupon of "loan" and "payment of loan."

Defendant concedes that plaintiffs made him a personal loan of $1500 in February, 1963, and he claims that the payments made to Taylors were solely on this indebtedness. Plaintiffs' final loan of $500 was made to defendant on September 29, 1967; defendant claims that this was compensation for his assistance in arranging a loan for plaintiffs.

In 1967, the plaintiffs felt impelled to move from their home in Salina, Utah, because of certain disturbances in their neighborhood. They had listed the property with a realtor but had been unable to effect a sale. Mr. Taylor was in his seventies, retired, and in poor health; plaintiffs sought defendant's assistance in procuring a loan, so they could purchase a home in Aurora, Utah. Defendant was able to arrange a loan but only upon terms where he was personally liable; so plaintiffs conveyed the property to him. Plaintiffs received a check for $10,313; defendant subsequently discharged the mortgage loan including interest and expenses. Defendant sold the home on a contract to one Herrara. Defendant does not deny that the transaction was a security arrangement and stated that he would convey the title and assign the contract for $7,000 cash.

From the foregoing, the trial court found that defendant, as trustee for the benefit

of plaintiffs, had them convey the property to him to secure financing and to arrange a sale, and that defendant in open court acknowledged that the obligation due him for the funds so secured would be satisfied for the sum of $7,000. This sum, in addition to the three payments made by defendant to plaintiffs, was offset against the total indebtedness of defendant in the judgment.

On appeal, defendant asserts that the trial court erred in construing the preincorporation agreement as a loan and not as a speculative venture, i. e., the court permitted parol evidence to alter the express terms of a written contract. This entire controversy is predicated on whether the agreement of the parties was an oral loan or written contract for a business venture. The evidence was sharply conflicting, and the determination of the trial court was adverse to defendant. The court did not vary the terms of a written contract, but, upon substantial evidence, it found that the exhibit presented by defendant was not the agreement of the parties.

Defendant contends that if there were an oral agreement to loan money such an agreement is barred by the Statute of Frauds, Section 25-5-4(1), U.C.A.1953, as an agreement which by its terms is not to be performed within one year from the

making thereof. Defendant attempts to refer to a provision in the preincorporation agreement wherein an accounting was not to be made until January 13, 1963.

The trial court did not find this document to be the agreement of the parties. Mrs. Taylor testified that defendant requested a loan for a period of six months to one year. An oral promise to pay within a year is valid and not within the Statute of Frauds, and the mere fact that a party in violation of his promise failed to pay within the stipulated time, does not give him a right to invoke the statute.[1]

Defendant asserts that the funds loaned in 1962 are barred by the Statute of Limitations as provided in Section 78-12-25(1), U.C.A.1953, wherein an action upon an obligation not founded upon an instrument in writing must be commenced within four years after the last payment is received. Defendant made the following payments: (a) July 25, 1965, $800; (b) October 2, 1966, $75; (c) December 5, 1966, $100. Plaintiffs commenced this action on June 4, 1969, which is within the four-year limitation period. Defendant urges that the payments he made were limited to the indebtedness he incurred in 1963; the trial court did not adopt defendant's interpretation of the transaction;

---

1. Thompson v. Whitney, 20 Utah 1, 7, 57 P. 429 (1899); also see Zions Service Corp. v. Danielson, 12 Utah 2d 369, 372–373, 366 P.2d 982 (1961).

this was a factual determination which cannot be disturbed on appeal.

Defendant contends that the trial court erred in its determination that the plaintiffs were the owners of the real property in Salina, Utah, and that defendant held the property in trust to secure certain funds which were paid to plaintiffs. Defendant pleaded the Statute of Frauds, Section 25–5–1, U.C.A.1953; he urges that there was no instrument in writing concerning this alleged trust relating to real property.

Section 25–5–2, U.C.A.1953, provides:

The next preceding section [25–5–1] shall not be construed . . . to prevent any trust from arising or being extinguished by implication or operation of law.

In Wasatch Mining Co. v. Jennings [2] this court construed the foregoing statute and stated that trusts arising by implication or operation of law are expressly excluded from the effects of the Statute of Frauds; and, a deed of conveyance, though absolute in form, if given to secure a debt, is in equity treated as a mortgage—a trust by operation of law.

The Restatement, Trusts (2d), Section 44, provides:

(1) Where the owner of an interest in land transfers it inter vivos to another in trust for the transferor, but no memorandum properly evidencing the intention to create a trust is signed, as required by the Statute of Frauds, and the transferee refuses to perform the trust, the transferee holds the interest upon a constructive trust for the transferor, if

\*      \*      \*      \*      \*      \*

(c) the transfer was made as security for an indebtedness of the transferor.

■ The trial court did not err in its determination that the deed, although absolute in form, was in fact executed as security for a loan of money.[3] Defendant was a constructive trustee, who held title to secure the funds advanced to plaintiffs.

■ Finally, defendant contends that the trial court erred in the amount of the indebtedness incurred by defendant for the benefit of plaintiffs in regard to the property subject to the trust. Defendant expended funds far in excess of the $7,000 to repay the mortgage loan he procured, as well as the selling expenses. Defendant sold the property for $12,000, with a $1,000 down payment and the remainder on contract. Defendant proclaimed in open court that he would assign his interest in the contract for $7,000 in cash; he explicitly extended this offer to plaintiffs. Based on the foregoing, the trial court determined

2.  5 Utah 243, 15 P. 65 (1887).

3.  Corey v. Roberts, 82 Utah 445, 25 P.2d 940 (1933).

**44**

that the plaintiffs' obligation to defendant to be satisfied for $7,000. Defendant has not asserted any ground upon which to predicate prejudicial error.

The judgment of the trial court is affirmed. Costs to respondents.

TUCKETT, HENRIOD and CROCKETT, JJ., concur.

ELLETT, Justice (concurring and dissenting):

I concur in the holding that whether the money advanced by the plaintiffs to the defendant was a loan or an investment was a question for the trier of the fact to determine. The court on believable evidence having found for plaintiffs on this matter, we should affirm. However, the credit for $7,000 should not stand.

The plaintiffs needed money to buy a new house, and being unable to sell their old home or to borrow on it requested the defendant to get a loan for them. The loan could be secured only if the defendant were the borrower. Consequently, a deed was prepared and executed by the plaintiffs transferring the home to the defendant.

The best offer which plaintiffs had for the sale of the house was $10,000. However, defendant secured a loan in the face amount of $11,000 on his note and mortgage, from which $10,313, the net amount of the loan, was turned over to the plaintiffs.

Ultimately the defendant with his own money paid the note and had the mortgage released. The property then stood in his name. It appears that his actual cash outlay as a result of the transaction was as follows:

| | |
|---|---:|
| Additional insurance premium for updated insurance | $ 99.00 |
| Land and Title Insurance Policy | 83.00 |
| Interest on loan | 1,527.88 |
| Additional insurance policy for extended period of note | 221.00 |
| Payment of interest and principal of note | 11,253.66 |
| Commission on sale | 240.00 |
| City of Salina curbing and gutter assessment | 48.00 |
| One half of escrow fees | 10.00 |
| Miscellaneous costs of Tucker Real Estate | 59.19 |
| Total | $13,541.73 |

In addition, he was required to spend considerable time and effort in connection with the transaction. At trial he claimed to own the property, and thinking that he had, like Ben Franklin of old, paid more for his whistle than it was worth, stated that he would be happy to get $7,000 cash for it.

The plaintiffs claimed that he held the place in trust for them and was simply their agent in securing the loan. The court gave judgment against the defendant for the money he had borrowed and also ordered him to transfer the title to the home back to plaintiffs. Then the court, claiming to take the defendant at his word, allowed him a credit for only $7,000, the amount he said he would be willing to sell the home for. That is, the court in holding him as trustee of the house for plaintiffs and finding that he had been only an agent for them in securing the loan, allowed him as a credit for the money he had actually paid out only the value of the plaintiffs' house instead of the amount he had actually spent. The plaintiffs received $10,313 and stood no part of the cost of the loan nor paid any interest thereon.

This just does not make sense to me. Inasmuch as the court held him to be a mere trustee of the home, he could not sell it for $7,000 or for any other sum. If he was only the agent of the plaintiffs in getting the loan, it seems to me that justice would require that he be reimbursed for his total outlay in clearing the mortgage from the land.

I would remand the case with direction to the trial court to allow the defendant a credit for all of his outlay in the transaction and to consider whether any additional allowance should be made for his trouble. I would otherwise affirm the trial court.