**Marion L. KESLER and Gregory L. Kesler, a minor, by Marion L. Kesler, his guardian ad litem, Plaintiffs and Respondents,**

v.

**Willard B. ROGERS and Rockefeller Land and Livestock Company, Defendants and Appellants,**

and

**Edward B. Rogers et al., Defendants.**

**No. 13915.**

Supreme Court of Utah.

Oct. 24, 1975.

Robert C. Cummings, Mark S. Miner, William H. Henderson, Harley W. Gustin of Gustin & Gustin, Salt Lake City, for defendants-appellants.

Robert S. Campbell, Jr., Philip C. Pugsley, Salt Lake City, for plaintiffs-respondents.

CROCKETT, Justice:

Plaintiff Marion L. Kesler sued contesting ownership to a tract of 318 acres of ranch-farm land near Kanosh in Millard County, and to cattle and other personal property; and also asked for punitive damages against defendant Willard Rogers, alleging wilful and malicious conduct in claiming ownership of the land and removal of the cattle. The case being in equity, there was an advisory jury.[1] They answered interrogatories generally in favor of the plaintiff. Pursuant thereto, the court made a memorandum decision, declaring ownership of the property in question in the plaintiff, and awarded $25,403.-17 for the taking of plaintiff's cattle, and other items of damages: and also awarded $10,000 punitive damages against the defendant.

Defendant appeals, relying on a written conveyance of the property in question and contending that extraneous proof that the conveyance was only a security agreement was violative of the parol evidence rule and the statute of frauds; and that in any event he had no prior notice thereof and was thus an innocent purchaser. He assigns error in connection with the instructions given the jury; and also attacks the award of $10,000 punitive damages as unjustified and excessive.

It seems necessary and appropriate to reiterate the oft-stated rule of review: that we are obliged to survey the record, not as the defendant views the facts from his defensive position, but in the light favorable to the findings made by the advisory jury and to the findings and decision made thereon by the trial court.[2]

In July 1969, Mr. Kesler became the sole purchaser (by assignment from co-purchaser associates) of the property in controversy here, together with a nearby 480-acre tract, from Grant V. and Grace W. Staples. Conveyances of all of the aforementioned property were placed in escrow pending completion of performance of the contract by Mr. Kesler. This is hereinafter referred to as the Staples escrow.

1. U.R.C.P. 39(c).

2. See *Memmott v. United States Fuel Co.*, 22 Utah 2d 356, 453 P.2d 155.

Prior to that time plaintiff Kesler had been approached by an agent of Mr. Walter Kershaw,[3] who had acquired the land adjoining the 480-acre tract and was interested in purchasing the latter tract to add to his farm-ranching operation. Pursuant to discussions, these parties, Kesler and Kershaw, entered into an agreement by which Kershaw was to purchase the 480-acre tract. Inasmuch as that tract was included in Kesler's purchase from Staples, and thus in the Staples escrow, a problem existed as to how Kesler would assure marketable title to Kershaw in the event Kesler should default on his contract with Staples. They agreed to handle this by having Kesler transfer his entire purchase under the Staples escrow to insure that the title to the 480-acre tract would later be cleared and transferred to Kershaw; and that further, as soon as title to the 480-acre tract had been conveyed to Kershaw, his security interest in the remainder of the Staples escrow owned by Kesler would terminate.

A fundamental difficulty in this case is that the documents used in implementing the foregoing agreement did not spell out the security aspect of the agreement just recited, but simply recited conveyance of the property to Mr. Kershaw. The further complication is that when Mr. Kershaw later decided to sell his holdings to defendant Rogers, in December 1970, the documents were not prepared in accordance with the understanding between the parties, but the descriptions were copied from those of the first transaction. They therefore purported to transfer not only the 480-acre tract, but also the other real and personal property contained in the Staples escrow.[4]

A few days after this had occurred, defendant Willard Rogers, without any notice to Mr. Kesler that he claimed the cattle, and apparently acting upon the assumption that the conveyance to him covered the cattle included in the Staples escrow, engaged the aid of several other people, including the county sheriff, to go and take 78 cows and one calf which belonged to Kesler (this included ten head belonging to Kesler's minor son Gregory). Persisting in conduct of the same character, the following month, in January 1971, Defendant Rogers went to the Delta livestock auction, where Mr. Kesler was selling two other cows and their calves, which were branded with the Staples "K" brand. He represented to the auctioneer and the brand inspector that the brand was registered to him; and the proceeds of the sale were held to ascertain who owned the stock. Upon checking with the State Brand Supervisor, the auctioneer learned that defendant Rogers' claim was false; and that he did not own the "K" brand, nor the livestock.

The jury answered special interrogatories indicating their findings of these facts: that only the 480-acre tract was intended to be conveyed from Kesler to Kershaw; that the balance of the real and personal property purportedly transferred by the conveyances was so described only for security purposes; that defendant Rogers had knowledge of these facts and of Kesler's interest therein before he received his conveyances from Kershaw; and that Rogers, with knowledge of these facts, had wrongfully taken possession of Kesler's cattle and had interfered with the latter's sale of cattle at the Delta auction; and further, that such conduct of Rogers was wilful and malicious, for which the amount of $10,000 punitive damages should be awarded.

■ We consider the defendant's contentions in the light of the facts just recited; and as viewed by the trial court in his findings and judgment entered thereon. We see no reason to be concerned with the statute of frauds here. We are dealing

---

3. Kershaw was named as a defendant, but the trial court granted his motion to dismiss.

4. Additional litigation involving Kershaw's attempts to sell the 480-acre tract was decided in *Bradshaw v. Kershaw*, 529 P.2d 803 (1974).

with written conveyances signed by the parties to be charged thereby. Concerning defendant's contention that he had a right to place inviolable reliance upon the written instruments and that they were not subject to be varied or contradicted because of the parol evidence rule, this is to be said: that rule has long been recognized as sound and as having a salutary purpose in proper circumstances. But, like all other rules, its purpose is to serve the cause of justice and not to defeat it. Therefore, there have come into being numerous exceptions in situations where the rigid adherence to the rule would have that effect.[5] One of the notable ones, which has application here, is that as between the immediate parties, where the terms of the written instrument are mistaken in that they do not show what the true intent and agreement between the parties was, it may be reformed to show that intent. In more specific application here, when the conveyance (or a part of it) was made only for the purpose of security rather than as an outright conveyance, that fact may be shown.[6]

■ Upon our survey of the record we see nothing therein which leads us to disagree with the view taken by the trial judge: that the evidence was so substantial and persuasive that it could hardly be open to doubt that the recitals above made represented the facts as to the agreement between Kesler and Kershaw; and similarly that defendant Rogers had notice of such facts, which he received from several sources: Kershaw, Kesler and from Kershaw's attorney Mr. Carvel Mattson. In accordance with what we have just said, we are not persuaded that this court should overturn the findings on the evidence adopted by the trial court.

■ Defendants' contention of error in the instructions to the jury centers upon the failure of the court to tell the jury that because the interrogatories submitted to them concerning the intent of the parties involved conflict with written instruments, they must find such facts by clear and convincing evidence. Plaintiff's rejoinder to this, in which we see merit, is that the defendant did not submit a request for such an instruction. Moreover, in the taking of exceptions to the instructions which were given, there was no clear and correct statement to the court as to what instruction defendant desired in that regard. He is therefore not in a position to complain about failure to give a correct instruction.[7]

■ Further, concerning the instructions: in addition to and perhaps more important than what has just been said, are the following observations concerning the function of a jury in a case such as this. The remedy sought of reforming a written instrument is an equitable one in which the appeal is to the conscience of the court. When a jury is used in an equity case, it acts in an advisory capacity. It is true that when the court has sought the aid of a jury, it should give due consideration to the jury's findings or conclusions, and not disregard them lightly.[8] Nevertheless, in such cases, it is still his prerogative to accept or reject the findings or conclusions of the jury in accordance with the dictates

5. See 61 A.L.R.2d 1390; 30 Am.Jur.2d Evidence Secs. 1032–1079.

6. *Corey v. Roberts*, 82 Utah 445, 25 P.2d 940 (1933); *Bybee v. Stuart*, 112 Utah 462, 189 P.2d 118 (1948); *Taylor v. Turner*, 27 Utah 2d 39, 492 P.2d 1343 (1972); 111 A.L.R. 448; 61 Am.Jur.2d Evidence Sec. 1068.

7. See Rule 51, U.R.C.P. In order for a party to take advantage of a failure to give a correct instruction, he must have proposed such correct instruction and excepted to the trial court's failure to give it. *Williamson v. Denver and R. G. W. R. Co.*, 26 Utah 178, 487 P.2d 316; *Morgan v. Pistone*, 25 Utah 2d 63, 475 P.2d 839. We so state in awareness that in exigent circumstances the court may reverse a judgment because of improper or inadequate instructions if it is convinced that an injustice has been done. A circumstance we do not find present here.

8. *Scotten v. Wright*, 14 Del.Ch. 124, 122A. 541 (1923); 30A C.J.S. Equity, Sec. 510 refs. at note 84.

of his own conscience and sense of justice.[9]

It was in harmony with this prerogative that the trial judge stated his confident conviction that the evidence showed that as between Kesler and Kershaw the conveyance was only of the 480-acre tract; and the other property here in dispute was not included, and equally so, that defendant Rogers had knowledge of those facts. In such circumstances we do not perceive how making nice distinctions in the jury instructions as to burden or proof could have had any substantial effect upon the case.[10] Consequently, for both of the reasons stated above, we do not think there was error in the instructions which would justify reversal of the judgment.

In his attack upon the award of $10,000 punitive damages defendant argues that (a) he was but attempting to enforce what he in good faith believed to be his legal rights under the conveyances and his conduct could therefore not properly be characterized as wilful and malicious; and (b) that in any event it is excessive and oppressive because it bears no reasonable relationship to any proper punishment for his conduct, nor to whatever injury or damage was caused to the plaintiff.

In considering the problem of punitive damages and the arguments thereon, it is well to have in mind the purposes of punitive damages. They are: a punishment of the defendant for particularly grievous injury caused by conduct which is not only wrongful, but which is wilful and malicious so that it seems to one's sense of justice that mere recompense for actual loss is inadequate and that the plaintiff should have added compensation; and that the defendant should suffer some additional penalty for that character of wrongful conduct; and also that such a verdict should serve as a wholesome warning to others not to engage in similar misdoings. Nevertheless, even though this is an extraordinary remedy authorized by the law for foregoing purposes, because it goes outside the field of usual redressful remedies, it should be applied with caution lest, engendered by passion or prejudice because of defendant's wrongdoing, the award becomes unrealistic or unreasonable. It is sometimes said that such damages should not be unreasonably disproportionate to the actual damages suffered; or perhaps more appropriately, to the nature of the wrong done and the injury caused.[11]

Despite defendant Rogers' argument that he was but attempting to enforce what he believed to be his legal rights, under the facts as found by the jury and the trial court, we are obliged to assume these facts bearing on the issue of punitive damages: that defendant wilfully set about and persisted in claiming land, cattle, and other property when he knew that in equity and good conscience he had no legitimate claim to them. Further, it seems quite incontrovertible that the representations he made to the auctioneer and the brand inspector concerning his ownership of the animals and the brand at the Delta livestock auction were knowingly false. It is further pertinent that this wrongful conduct has resulted in this litigation which has dragged on for several years; and that the cattle were taken when the son Gregory was thirteen years old, so that the parties have been without the cattle during his formative years.

9. *Smith v. Richardson*, 2 Utah 424; *Frehner v. Morton*, 18 Utah 2d 422, 424 P.2d 446; *Kemp v. Zions First National Bank*, 24 Utah 2d 288, 470 P.2d 390.

10. Under both Rules of Procedure and Decisional Law, we do not reverse for mere error, but only if error is substantial and prejudicial see Rule 61, U.R.C.P., *Callahan v. Simons*, 64 Utah 250, 228 P. 892; *Richards Estate*, 5 Utah 2d 106, 297 P.2d 542.

11. Cf. *Evans v. Gaisford*, 122 Utah 156, 247 P.2d 431 (1952).

On the basis of what we have just said above, we do not believe it can be said that the award of punitive damages is so wholly without foundation that it should be entirely nullified. However, it is our opinion that in applying the modifying factors recited above, the award of $10,000 is excessive and that it should be reduced to $5,000.

With that reduction the judgment is affirmed. The parties to bear their own costs.

HENRIOD, C. J., and TUCKETT and MAUGHAN, JJ., concur.

ELLETT, J., concurs except that he would affirm the judgment as made.