Marvin W. HANSEN and Beverly M. Hansen, his wife, Plaintiffs and Appellants,

v.

Reuel S. KOHLER and Dolores M. Kohler, his wife, Defendants and Respondents,

Earsel G. Pierce and Patricia B. Pierce, his wife, Intervening Defendants and Cross-Claimants.

Amended No. 14099.

Supreme Court of Utah.

May 11, 1976.

David R. Bowen, Salt Lake City, for appellants.

Bryce E. Roe & Mont McDowell, Salt Lake City, for respondents. David J. Knowlton, of Vlahos & Knowlton, Ogden, for intervening defendants.

MAUGHAN, Justice:

On appeal is a judgment of the district court dismissing plaintiffs' (hereafter Hansen) complaint against defendants (hereafter Kohler) and awarding a money judgment in favor of intervening defendants and cross-claimants (hereafter Pierce) against Hansen. The matters on appeal will be dealt with in that order. We reverse both judgments, and remand with instructions. Because of the error in granting Kohler's motion to dismiss,[1] at the close of Hansen's evidence, the state of the record here requires further proceedings to allow Kohler to present his case, if he chooses. It is not necessary for Hansen to present his case anew; however, he may supplement the record in chief or in rebuttal, with such evidence as would have been admissible at the initial trial.[2] Costs awarded to Hansen against both defendants.

Sometime prior to the first of April, 1969, Kohler, a realtor, secured the signatures of Hansen and one Robinson on an earnest money receipt and offer to purchase. By its terms Robinson was to pay Kohler a commission of $2,364 and Hansen was to convey to Robinson, as a downpayment, a piece of property he owned in Howell, Utah, having an agreed value of $7,500. The other terms of the contract are not material here. Robinson is not a party to this lawsuit.

On the first of April 1969, Hansen and Robinson, as buyer and seller, executed a Uniform Real Estate Contract reflecting the terms of the earnest money agreement. On April 2, 1969, Hansen executed two warranty deeds describing the Howell property, and showing Kohler as grantee. The warranty deeds are the result of a collateral agreement between Robinson and Kohler, whereby Kohler was to pay Robinson $2,000 and waive his real estate commission, due from Robinson. This arrangement was abandoned by the parties. The testimony of Hansen, that originally the conveyance to Kohler was to be absolute, is consistent with this abandoned agreement. As the subsequent arrangements unfold, the deeds were given a different significance.

A short time later, a title search disclosed that the Howell property was included in a mortgage on Hansen's farm. Thus, on April 28, 1969, a supplemental agreement was executed between Hansen and Robinson. This agreement recited that Hansen would pay to Robinson an advance payment of $1,000 as a demonstration of good faith, and that both parties desired to fulfill their contract obligations.

On June 12, 1969, another supplemental agreement was engaged, by Hansen and Robinson, noted as an amendment to the contract of April 1st. At Robinson's suggestion, it was agreed that Hansen would transfer his automobile to Robinson; the

---

1. Rule 41(b), U.R.C.P.

2. 5 Moore's Federal Practice, 41.13(2), p. 1151; *White v. Rimrock Tidelands, Inc.,* 5 Cir., 414 F.2d 1336 (1969).

contract reciting "possession of automobile to be transferred on May 10, 1969." The contract further recited "buyers agree to transfer title to home and acreage in Howell, Utah" to Kohler, "warranty deed was executed 1 April 1969." The concluding sentence of the contract recites, "Buyers and sellers agree that this together with other terms defined in said contract constitutes the down payment." This agreement was drawn in Kohler's office.

Prior to this time, the automobile had been taken by Robinson, for the purpose of determining its reasonable value. Its value was determined to be within the range of $5,000 to $5,300.

It is the contention of Hansen that the execution of the warranty deeds on April 2, 1969, constituted a security transaction whereby Kohler would be assured of his commission, which Hansen had agreed to pay; because Robinson did not want to accept the Howell property. Hansen testified, without contradiction, that the transfer of the automobile at a figure of $5,136, to Robinson, together with the $2,364 commission owed to Kohler, amounted to the $7,500 down payment and acquitted him of his obligations to both Robinson and Kohler. Thus, the difference between the value placed on the Howell property, viz., $7,500 and the $2,364 commission to be paid to Kohler was to rebound to his credit. It is Kohler's contention that the Howell property was deeded to him outright in payment of the only obligation owed to him, viz., his commission of $2,364, and that this is so because of the risk Kohler would have assumed by accepting the property subject to its encumbrances. Such is the way the transaction was represented to the court in Kohler's opening statement:

> So the transaction as it was rearranged then was that Kohler would not pay the $2,000 [to Robinson], he would take the property subject to the $19,900 mortgage and see what he could do with it and Mr. Hansen would transfer The Thunderbird.

The difficulty with this claim is that Kohler did not take the property subject to the mortgage; he took the property, but Hansen paid off the mortgage. Thus Kohler was left wtih a piece of unencumbered property, the agreed value of which was $7,500, in payment for a real estate commission of $2,364. In addition, Hansen transferred to Robinson property with a value of $5,136.

It is Kohler's claim that the deeds are absolute on their face; so they appear to be, but when viewed in connection with the subsequent agreements particularly the one of June 12, 1969, ambiguities are injected into the transaction, which destroy such a claim, and render necessary a more searching look into the evidence. That the deeds of April 2, 1969, were indeed evidence of a security transaction is borne out by the agreement of June 12, 1969, in which Hansen then agrees "to transfer title" to Kohler. Up until that time, it is apparent there was no delivery. In addition, in that same amendment of June 12, 1969, it is agreed that the considerations mentioned therein, together with the terms defined in the contract of April 1, 1969, constitute the down payment. The automobile, together with the Howell property, amount to a down payment of $12,636—Hansen was credited with only $7,500 as a down payment.

Further uncontradicted testimony of Hansen is that Kohler was to sell the Howell property, recover his commission of $2,364, together with a commission for the sale of the Howell property (amounting to $450), return the balance to Hansen, and settle up with Hansen on rents and taxes.

■ Because of the ambiguities apparent on the face of the record, we do no injustice to the parol evidence rule in determining that the deeds of April 2, 1969, absolute in their terms, were intended as security instruments. As was stated in *Corey v. Roberts:* [3]

> In determining whether a deed, absolute in its terms, is intended as a mort-

3. 82 Utah 445, 25 P.2d 940, 942 (1933).

gage, some of the essential elements to be considered as laid down by the authorities are: Whether or not there was a continuing obligation on the part of the grantor to pay the debt or meet the obligation which it is claimed the deed was made to secure; the question of relative values; the contemporaneous and subsequent acts; the declarations and admissions of the parties; the form of the written evidences of the transactions; the nature and character of the testimony relied upon; the various business, social, or other relationship of the parties; and the apparent aims and purposes to be accomplished.

 Examining the facts in the light of these considerations, we are convinced that the Howell property was intended as security for the payment of Kohler's commission, of $2,364; that the automobile, together with the commission, was to constitute the down payment of $7,500; and that the difference was to be returned to Hansen. The rest having been sold, Kohler holds the proceeds prayed for as a constructive trustee.[4] It is also clear from Hansen's testimony that Kohler is entitled to commission on the sale of the Howell property, viz., 6 per cent of $7,500, amounting to $450, and to recover such real property taxes as he paid from April 1, 1969, to the date of the sale; that Hansen is entitled to such rents as Kohler collected during that same period, and such are an offset against the said taxes and commission. The matter is remanded with instructions to render judgment against Reuel S. Kohler and Dolores M. Kohler, his wife, for the sum of $5,136, together with interest at 6 per cent from date of sale to judgment, in favor of Marvin W. Hansen and Beverly M. Hansen, his wife. The court shall determine the amount of real property taxes paid by Kohler between April 1, 1969, and the date of the sale, together with the amount of rents received by Kohler during that same period; render judgment in favor of Kohler against Hansen for the sum of $450, as commission on the sale of the Howell property, together with the amount of real property taxes paid with interest; render judgment in favor of Hansen against Kohler for the rents received by Kohler during that same period, together with interest at 6 per cent from date of acquisition to judgment, such constituting an offset; and award any excess to the appropriate party.

Pierce as intervening defendants and cross-claimants appeals seeking modification of the judgment rendered in their favor, by increasing the award, and further seeks exemplary and punitive damages. The appeal of Pierce is not well taken, and we reverse and remand with instructions to enter judgment in favor of Hansen and against Pierce, for failure to state a claim upon which relief can be granted.

 On the 7th day of October, 1971, Hansen filed his complaint against Kohler. This was done by mail and Hansen's counsel asked the county clerk to inform him when the complaint had been filed, so he could record a lis pendens. For some reason this information was not delivered to Hansen's counsel, and he mailed the lis pendens to the county recorder for recordation. The lis pendens was recorded October 19, 1971. A conveyance of the Howell property from Kohler to Pierce was recorded the previous day, October 18, 1971. It is through this lis pendens that Pierce sought damages for slander of title. The contention of Hansen is the recording of the lis pendens was privileged; and, therefore, Pierce had no claim for slander of title. This contention is well made.

Restatement, Torts, Section 638:

A party to a private litigation . . . has an absolute privilege to disparage another's property in or the quality of his land, chattels, or intangible things in the institution of or during the course and as a part of a judicial proceeding in

---

4. *Taylor v. Turner*, 27 Utah 2d 39, 492 P.2d 1343 (1972).

which he participates if the disparagement has some correlation thereto.

Comment c. of Section 638, refers to the Comment of Section 587, wherein it is stated, at page 231:

a. The privilege stated in this section is based upon the public interest in according to all men the utmost freedom of access to the courts of justice for the settlement of their private disputes. Like the privilege of an attorney, it is absolute. It protects a party to a private litigation or a private prosecutor in a criminal prosecution from liability for defamation irrespective of his purpose in publishing the defamatory matter, of his belief in its truth or even his knowledge of its falsity. One against whom civil or criminal proceedings are initiated may recover in an action for the wrongful initiation of the proceedings, under the rule stated in sections 674 to 680, if the proceedings have terminated in his favor and were initiated without probable cause and for an improper purpose.

The sole purpose of recording a notice of lis pendens is to give constructive notice of the pendency of the proceeding; its only foundation is the action filed—it has no existence independent of it. Our statute[5] authorizing the use of lis pendens, concludes by saying, "From the time of filing such notice for record only shall a purchaser or an encumbrancer of the property affected thereby be deemed to have constructive notice of the pendency of the action, and only of its pendency against parties designated by their real names."

The clear weight of authority describing the office of a lis pendens is well stated in *Albertson v. Raboff,*[6] wherein the court reasoned that since the effect of a lis pendens is to give constructive notice of all the facts apparent on the face of the pleadings, the recordation of a notice of lis pendens is, in effect, a republication of the pleadings. Since the publication of the pleadings is absolutely privileged, the republication thereof by recording a notice of lis pendens is similarly privileged. The court said:

. . . It would be anomalous to hold that a litigant is privileged to make a publication necessary to bring an action but that he can be sued for defamation if he lets anyone know that he has brought it, [citation omitted] particularly where he is expressly authorized by statute to let all the world know that he has brought it. . . . [at page 409 of 295 P.2d.]

In the instant action, Hansen's recordation of a lis pendens was absolutely privileged and the action of Pierce for slander of title cannot be sustained.[7] Our case of *Birch v. Fuller*[8] is distinguishable from the instant action, because there no legal action was filed. Consequently, the recordation of the lis pendens in that matter was neither in accordance with law,[9] nor did it constitute a republication of any pleadings filed in an action.

TUCKETT, J., and JOSEPH E. NELSON, District Judge, concur.

CROCKETT, Justice, concurs in the result.

ELLETT, Justice (dissenting in part).

The main opinion makes a complicated case out of that which seems so simple.

Respondent Kohler was a real estate broker for Robinson in the sale of a fourplex to Hansen. The agreed price was $39,400 with a down payment of $7,500 represented by the transfer of a house owned by Robinson.

5. 78–402, U.C.A.1953.

6. 46 Cal.2d 375, 295 P.2d 405 (1956).

7. See *Houska v. Fredrick* (Mo.), 447 S.W.2d 514 (1969); *Zamarello v. Yale* (Alaska), 514 P.2d 228 (1973); *Stewart v. Fahey,* 14 Ariz.App. 149, 481 P.2d 519 (1971).

8. 9 Utah 2d 79, 337 P.2d 964 (1959).

9. 78–40–2, U.C.A.1953.

The title search showed that the house was subject to a mortgage and the parties changed the agreement whereby Hansen would give his Thunderbird automobile to Robinson and prepay a future installment on the four-plex.

Robinson did not want the house and had some problem about paying Kohler his commission so he and Kohler agreed that Kohler would take the house, cancel the commission due, and would pay Robinson the sum of $2,000 cash.

The only change in the contract between Robinson and Hansen was the giving of the Thunderbird car and the advance of the future installment on the contract. Hansen still got his $7,500 credit for the house. However it was agreed between all parties that the house would be deeded to Kohler instead of to Robinson. This change of grantee in the deed was of no concern to Hansen as he simply deeded it to the person designated by Robinson. Hansen still got his $7,500 credit on the four-plex.

If there was any bargain on behalf of Kohler, it was at the expense of Robinson and is of no concern to Hansen.

The Thunderbird automobile was given in order to save the deal as Hansen wanted the four-plex and Robinson did not want a house with a mortgage on it.

If Hansen lost anything at all, it was not to Kohler but was to Robinson and consisted of his car. That loss seems to have been voluntarily sustained to make up for the fact that the house was incumbered by a mortgage. While Hansen eventually paid the mortgage, it was not done until after the agreements were made.

If there is anything given in trust to guarantee that the mortgage would be paid, it is the Thunderbird—not the house.

I would affirm the trial court in holding that Hansen had no claim against Kohler. I concur in the result as to the holding that the Pierces have no right to recover against Hansen.

HENRIOD, C. J., having disqualified himself, does not participate herein.