**Wayne B. BAKER, Plaintiff and Appellant,**

v.

**Charles W. TAGGART, a single man, H. B. Wade and Edna Wade, his wife, Valley Bank & Trust Company, and Commercial Security Bank, Defendants and Respondents.**

No. 16857.

Supreme Court of Utah.

April 13, 1981.

Dennis K. Poole, Salt Lake City, for plaintiff and appellant.

Ricardo B. Ferrari, W. Jeffery Fillmore, Salt Lake City, Commercial Security Bank, Ogden, for defendants and respondents.

HOWE, Justice:

The plaintiff, Wayne B. Baker, appeals from the trial court's judgment that he has no claim or interest in a house and real property located at 234–7th Avenue, Salt Lake City. Plaintiff had alleged that the conveyance of the property by the defendant Charles W. Taggart to the co-defendants H. B. Wade and Edna Wade was in the nature of an equitable mortgage and not a sale, and that the property was therefore an asset which plaintiff could reach to satisfy a judgment which he held against Taggart. The court, sitting without a jury, ruled that the conveyance of the property from Taggart to the Wades was intended as a sale and not as security for a loan. The court therefore entered judgment of "no cause of action" against the plaintiff. The interests of the other defendants are not at issue in this appeal.

Plaintiff obtained a judgment against the defendant Taggart for $45,813 on May 22, 1975. Approximately two months earlier, on March 19, 1975, Taggart had conveyed his home by quitclaim deed to H. B. Wade

and Edna Wade to raise money for personal reasons. According to the testimony, the Wades were to pay $20,000 for the property. On the same date Taggart executed a promissory note in the sum of $20,000 payable to Wade Finance, Mr. Wade's business. Wade then paid Taggart $10,000 and granted Taggart a written option to buy the house back for $10,900 on or before June 18, 1975. Taggart was unable to exercise the option, and Wade paid him an additional $7,000 by checks in two installments. The first installment of $3,750 was made on October 15, 1975. Taggart signed a promissory note on that date for $3,850 payable on November 22, 1975. This note was marked "secured by real property at 234–7th Avenue." The last installment was paid by check to Taggart on November 28, 1975, in the amount of $2,400. This check was endorsed by Taggart as "Balance in Full for Equity in Home located at 234–7th Avenue, Salt Lake City, Utah." Wade testified that he had previously paid Taggart $850, hence the total of $7,000. On November 28, Taggart also signed another promissory note for $3,150 payable on December 22, 1975, with interest at 18%. Taggart waived the final $3,000 payment in return for an option to purchase the home for $20,900 plus 18% of the $20,000, or $24,500, by November 1976. That option also expired unexercised.

Plaintiff contends that the existence of an equitable mortgage was established by clear and convincing evidence, and urges reversal of the decision below.

■ Whether a transaction is a sale, or a loan disguised as a sale, is a question controlled by the intention of the parties as it existed at the time of the execution and delivery of the instruments. *Jacobson v. Jacobson*, Utah, 557 P.2d 156 (1976); *Gibbons v. Gibbons*, 103 Utah 266, 135 P.2d 105 (1943). In *Hansen v. Kohler*, Utah, 550 P.2d 186 (1976), this Court quoting from *Corey v. Roberts*, 82 Utah 445, 25 P.2d 940 (1933), listed the elements to be considered in determining whether a deed absolute in form should be construed as a mortgage:

> In determining whether a deed, absolute in its terms, is intended as a mortgage, some of the essential elements to be considered as laid down by the authorities are: Whether or not there was a continuing obligation on the part of the grantor to pay the debt or meet the obligation which it is claimed the deed was made to secure; the question of relative values; the contemporaneous and subsequent acts; the declarations and admissions of the parties; the form of the written evidences of the transactions; the nature and character of the testimony relied upon; the various business, social, or other relationship of the parties; and the apparent aims and purposes to be accomplished. [550 P.2d at 188–89.]

■ The deed from Taggart to Wade is absolute on its face. Consequently, the burden of proof was upon the plaintiff to show by clear and convincing evidence that the conveyance was intended as a mortgage. *Corey v. Roberts*, supra. In the absence of such clear and convincing evidence, the presumption is that the instrument of conveyance is what it purports to be. The reason for this presumption is clear: to enhance the security of the title to real property. See *Jacobson v. Jacobson*, supra. See also Osborne, Nelson & Whitman, Real Estate Finance Law § 3.67 (1979).

■ The amount of the promissory notes given by Taggart to Wade total $27,000, while the amount given to Taggart by Wade equals $17,000. Both parties recognize that the execution of the notes is inconsistent with the theory that Taggart sold the property to Wade and supports a finding that there was a loan. But in response to a question by counsel for plaintiff, Mr. Taggart offered the following explanation:

Q. Can you explain to me why this property was secured by deed if it was to be a sale?

A. Well, Mr. Wade does things a little differently than anyone I have been around. Each time he gave me money, he made me sign a note. Actually, the reverse should be true. I said, "Mr. Wade, you owe me the money." But he said this is his form of recordkeeping. You know, he is—I think he is a very shrewd man but not brilliant. And he

comes from, you know, a country man from—This is the way he does business.

\* \* \* \* \* \*

As I said, each time I ever received any money from Mr. Wade, he made me execute a note to him. And I said to him—and we have had extended conversations over this—"Why is it that I sign a note to you when, in reality, you owe me the money?" And he, I believe—and you will have to ask him, but he uses this for his records. As he explained it to me, this is what he used to—so there would be no misunderstanding of what took place. He wanted to make sure that I knew that I had sold that house.

Mr. Wade's testimony was similar to Mr. Taggart's:

Q. Why did you draw up a Promissory Note, though?

A. Well, that's the way I do business. I've done it all the time. I've never had any repercussions from it. Because—the one thing I didn't want to have in this deal with Mr. Taggart was a misunderstanding. That's why when I gave him the $3850, that was the understanding. It was to apply against this $20,000. He couldn't say it went in something else. So, when I gave him the thirty-one fifty, I signed on the back is payment in full without any question of a doubt that that was my house.

Despite the existence of the promissory note there is competent evidence to support the finding of a sale. Both Taggart and Wade testified that the conveyance was a sale and not for purposes of security. Wade has never attempted to collect on the promissory notes. He testified he purchased the property as a long-term investment. When Taggart offered to purchase the home from Wade some time after the expiration of the options, Wade refused to sell. Taggart has never attempted to challenge the sale, even though testimony shows that the house has increased dramatically in value and if it were deemed a mortgage he could recover ownership and sell it to satisfy plaintiff's judgment against him, all to his advantage.

Plaintiff points to prior testimony of Taggart given in deposition wherein Taggart stated that he and Wade treated the transaction as a loan. When Taggart was confronted with his prior inconsistent statement at trial, he stated:

A. Well, I—maybe I said that, but in my mind I may have treated it as that, but in actuality, he owned the property.

This testimony, while confused, supports the sale theory. At any rate, prior inconsistent testimony reflects only on the credibility of the witness which the trier of fact may weigh in the consideration of such testimony.

At the time of the conveyance the equity in the home was approximately $20,000. The home was valued at $45,000–$50,000, but was encumbered by two mortgages totaling $25,000–$30,000. The $20,000 equity amount equals the value given by Wade to Taggart, and therefore supports a sale. Wade gave Taggart $17,000 cash, plus he charged Taggart $3,000 for the option to re-purchase the property. The endorsement by Taggart on the final check states that it was "in full for equity" in the property. The options granted by Wade to Taggart to re-purchase the property are at variance with there being a loan.

Finally, there was evidence adduced at trial which indicates that the parties behaved as if Wade owned the home. Wade allowed Taggart to remain in the home in return for Taggart's promise to maintain the property in good repair in addition to paying the mortgage payments, taxes and insurance in the amount of approximately $450 per month. There is no suggestion that this amount was unreasonably low. When Taggart fell behind in his rental payments, Wade threatened him with eviction. Although the record shows that Taggart claimed an income tax deduction for the interest paid on the mortgage after the conveyance to Wade, and Wade did not report any rental income or take a depreciation deduction for the property on his income tax returns, other competent evidence indicates that Wade acted as the owner of the home. Taggart testified that Wade

ordered him to get rid of his dog, replace the back door and re-paint the living room in a color more suitable to Wade's taste. Taggart also represented to his friends that he was renting the property.

While the evidence was conflicting, there is competent evidence to support the trial judge's finding that Taggart and Wade intended the conveyance to be an absolute sale and was not made as security for a loan.

Affirmed. Costs to defendants Wade.

MAUGHAN, C. J., and HALL, STEWART and OAKS, JJ., concur.